UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

99 - 0087 0 CR-KING

Case No. _____

18 U.S.C. § 1623 MAGISTRATE JUDGE
O'SULLIVAN

UNITED STATES OF AMERICA

vs

BASSAM GHARIB MAKKI,
a/k/a Hassan Mohamad Makki.
_____/

### INDICTMENT

The Grand Jury charges that:

### COUNT I

On or about September 21, 1998, at Miami-Dade County, in the Southern District of Florida,

the defendant,

**BASSAM GHARIB MAKKI,**
a/k/a Hassan Mohamad Makki,

did knowingly make a false material declaration while under oath in a proceeding before and ancillary

to a court of the United States, in that the defendant stated while under oath during an Initial

Appearance hearing in a United States district court that his name was Hassan Mohamad Makki,

when in truth and in fact, and as the defendant then and there well knew, his true name was and is

Bassam Gharib Makki; in violation of Title 18, United States Code, Section 1623.

A TRUE BILL

FOREPERSON

THOMAS E. SCOTT
UNITED STATES ATTORNEY

DAVID M. BUCKNER
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**99 - 00870 CR-KING**

UNITED STATES OF AMERICA   CASE NO.

v.                                   **CERTIFICATE OF TRIAL ATTORNEY\***
BASSAM GHARIB MAKKI
                                     **Superseding Case Information:**
                                     MAGISTRATE JUDGE
                                     O'SULLIVAN

**Court Division:** (Select One)        New Defendant(s)        Yes ____   No ____
                                     Number of New Defendants   ____
__X__  Miami  ____  Key West          Total number of counts     ____
____  FTL   ____  WPB ____  FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:        (Yes or No) __Yes__
    List language and/or dialect    __Arabic__

4.  This case will take __2__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                      (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | __X__ | Petty | ____ |
| II | 6 to 10 days | ____ | Minor | ____ |
| III | 11 to 20 days | ____ | Misdem. | ____ |
| IV | 21 to 60 days | ____ | Felony | __X__ |
| V | 61 days and over | ____ | | |

6.  Has this case been previously filed in this District Court? (Yes or No) __No__
If yes:
Judge: _____   Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __Yes__
If yes:
Magistrate Case No. __99-3664-STB__
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No) ____ No

7.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? __X__ Yes ___ No   If yes, was it pending in the Central Region? ___ Yes __X__ No

DAVID M. BUCKNER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 60550

\*Penalty Sheet(s) attached
N:\udd\jnotheis\david\cert.wpd

REV.3/19/99

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 99-00870 CR-KING

### PENALTY SHEET

MAGISTRATE JUDGE
O'SULLIVAN

Defendant Name: **BASSAM GHARIB MAKKI**   Case No. _____

Count #:  1 _____

_____ 18 USC 1623 _____

_____ Perjury _____

**\*Max. Penalty:**      **5 years' imprisonment** _____

=================================================================

Count #: _____

_____

_____

**\*Max. Penalty:**      **5 years' imprisonment** _____

=================================================================

Count #: _____

_____

_____

**\*Max. Penalty:** _____

=================================================================

Count #: _____

_____

**\*Max. Penalty:** _____

=================================================================

Count #: _____

_____

**\*Max. Penalty:** _____

=================================================================

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

Grand Jury No. 992-MCN0150

FORM OBD-34
JUN 85

# No. 99-00870 CR-KING

MAGISTRATE JUDGE
O'SULLIVAN

# UNITED STATES DISTRICT COURT

SOUTHERN District of FLORIDA

CRIMINAL Division

## THE UNITED STATES OF AMERICA

vs.

BASSAM GHARIB MAKKI

# INDICTMENT

18 USC 1623

A true bill.

_____
Foreman

Filed in open court this _____ day,
of _____ A.D. 19 ___

_____
Clerk

Bail, $ _____

FILED

NOV 2 1999

PER _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :    DOCKET NO. 99-MW-077-01

           V.           :    (MAGISTRATE JUDGE ASKEY)

BASSAM GHARIB MAKKI        :

### O R D E R

The Court, having conducted a hearing in accordance with Federal Rule of Criminal Procedure 40(a), makes the following findings:

- That Bassam Gharib Makki present today, is the same defendant named in the Criminal Complaint filed under Docket No. 99-3664-STB in the Southern District of Florida;

- That there is probable cause to believe that the defendant has committed the offenses (perjury and false statements) charged in the Criminal Complaint; and

- That there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant at future proceedings or the safety of the community.

The Court HEREBY ORDERS the defendant held in the custody of United States Marshal and removed to the district of jurisdiction.

_Nov 22 1999_
Date

_William H. Askey_
William H. Askey
U. S. Magistrate Judge

Certified from the record
Date 11/23/99
Mary E. D'Andrea, Clerk
Per _____
Deputy Clerk

OFFICE OF THE CLERK

**UNITED STATES DISTRICT COURT**
*for the*
**MIDDLE DISTRICT of PENNSYLVANIA**



*U. S. Courthouse*
*240 West Third Street*
*P.O. Box 608*
*Williamsport, PA 17703-0608*

MARY E. D'ANDREA
*Clerk of Court*

(717) 323-6380
FAX   (717) 323-0636

*November 23, 1999*

*Office of the Clerk*
*United States District Court*
*for the Southern District of Florida*
*301 North Miami Avenue*
*Miami, FL 33128-7788*
**ATTN: CRIMINAL DEPARTMENT**

*RE:   BASSAM GHARIB MAKKI*
*   MDPA NUMBER: 99-MW-077-01*
*   SDFL NUMBER: 99-3664-STB*

Dear Sir or Madam:

   *Enclosed please find a certified copy of docket sheet along with copies of docket entries regarding the Removal Hearing to the Southern District of Florida.*

   *Kindly return the enclosed copy of the cover letter marked "Received" and return to the Middle District of Pennsylvania for our records.*

   *Thank you.*

Very truly yours,

Rebecca A. Kuhns
*Deputy Clerk*

*Enclosures*

```
                    U.S. District Court
        Middle District of Pennsylvania (Williamsport)

          CRIMINAL DOCKET FOR CASE #: 99-MW-77-ALL
```

USA v. Makki                                    Filed: 11/17/99
Dkt# in other court: None

Case Assigned to:  Mag. Judge William H. Askey

BASSAM GHARIB MAKKI (1)          Bassam Gharib Makki
aka                              CTY-LYCOMING
Hassan Mohamad Makki             277 W. Third Street
    defendant                    Williamsport, PA 17701
                                 717-326-4623

                                 D. Toni Byrd
                                 [COR LD NTC pda]
                                 FPD
                                 One Executive Plaza
                                 330 Pine St.
                                 Suite 302
                                 Williamsport, PA 17701
                                 717-323-9314

Pending Counts:

    NONE


Terminated Counts:

    NONE



Complaints                       Disposition

COMPLAINT:  Warrant for Arrest
from SDFL


U. S. Attorneys:                 Certified from the record
                                 Date 11/23/99
    NONE                         Mary E. D'Andrea, Clerk
                                 Per _Rebecca Kulp_
                                      Deputy Clerk

Proceedings include all events.
4:99mw77-ALL   USA v. Makki

| 11/17/99 | 1 | COMPLAINT/Warrant for Arrest from SDFL  Mag. Judge William H. Askey (seal) [Entry date 11/18/99] |
|---|---|---|
| 11/17/99 | 2 | MOTION to detain by USA  as to Bassam Gharib Makki (seal) [Entry date 11/18/99] |
| 11/17/99 | 3 | MINUTE SHEET:  of Removal Hearingbefore Mag. Judge William H. Askey. Dft. requested arabic interpreter, clerk directed to secure interpreter.  Atty Byrd (AFPD) proposed dft. complete financial affidavit. Atty. Byrd apptd conditionally until financial afdt. secured.  Gov't moved for detention pending further hearing.  CTR: Tape Recorded as to Bassam Gharib Makki (seal) [Entry date 11/18/99] |
| 11/22/99 | 4 | MINUTE SHEET:  before Mag. Judge William H. Askey  as to Bassam Gharib Makki,  detention hearing held 11/22/99 as to Bassam Gharib Makki   CTR: Tape Recorded (attached to minute sheet) (bk) [Entry date 11/23/99] |
| 11/22/99 | 5 | EXHIBIT list  by plaintiff USA  (exhibits attached) (bk) [Entry date 11/23/99] |
| 11/22/99 | 6 | ORDER  by Mag. Judge William H. Askey  granting  motion to detain [2-1] and to remove defendant to district of jurisdiction (SDFL)(cc: dft, USA, counsel, USM, USP, Court) (bk) [Entry date 11/23/99] |
| 11/23/99 | -- | REMARK -  certified copies of docket with docket sheet sent to SDFL (bk) [Entry date 11/23/99] |

AO 442 (Rev. 12/85) Warrant for Arrest AUSA BUCKNER

# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA

UNITED STATES OF AMERICA

v.

BASSAM GHARIB MAKKI
a/k/a Hassan Mohamad Makki

**WARRANT FOR ARREST**

**CASE NUMBER: 99-3664-STB**

TO:  The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest __BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki__
                                                         Name

and bring him forthwith to the nearest magistrate to answer a

[ ] Indictment  [ ] Information  [XX] Complaint  [ ] Order of court  [ ] Violation Notice  [ ] Probation Violation Petition

charging him with (brief description of offense)

MAKING A FALSE STATEMENT UNDER OATH BEFORE A UNITED STATES MAGISTRATE JUDGE

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1621.

## STEPHEN T. BROWN

Name of Issuing Officer

Signature of Issuing Officer

Bail fixed at $ _____

United States Magistrate Judge
Title of Issuing Officer

Miami, Florida                    11/10/99
Date and Location

~ STEPHEN T. BROWN ~
UNITED STATES MAGISTRATE JUDGE

by _____
        Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

AO 442 (Rev. 12/85) Warrant for Arrest

## BOND RECOMMENDATION

DEFENDANT___BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki_____

$_PTD (NO BOND)_     (Personal Surety, Recognizance, Corp. Surety, Cash) (Jail) (On
                     Bond) (Warrant) (Summons) (Marshal's Custody)


_____
DAVID M. BUCKNER
ASSISTANT UNITED STATES ATTORNEY


Last Known Address:_____

What Facility:      ___ALLENWOOD MAXIMUM SECURITY PRISON_____

Special Agent:      ___JAMES COMBS, U.S. DIPLOMATIC SECURITY SERVICE___

**THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:**

DEFENDANT'S NAME:  BASSAM GHARIB MAKKI

ALIAS:  Hassan Mohamad Makki

LAST KNOWN RESIDENCE:  ALLENWOOD MAXIMUM

LAST KNOWN EMPLOYMENT:

PLACE OF BIRTH:  Lebanon

DATE OF BIRTH:

SOCIAL SECURITY NUMBER:

HEIGHT:  _____  WEIGHT:  _____

SEX:  Male  RACE:  _____

HAIR:  _____  EYES:  _____

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS:

FBI NUMBER:

COMPLETE DESCRIPTION OF AUTO:

INVESTIGATIVE AGENCY AND ADDRESS:  U.S. DEPT. OF STATE DIPLOMATIC SECURITY SERVICE

FEDERAL BLDG., ROOM 404   51 S.W. AVENUE, MIAMI, FLORIDA 33130

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _99 – 3664 – STB_

UNITED STATES OF AMERICA

v

BASSAM GHARIB MAKKI
a/k/a  Hassan Mohamad Makki

_____/

## CRIMINAL COMPLAINT COVER SHEET

1.  Did this case originate from a matter pending in the United States Attorney's Office
    prior to April 1, 1999?   _X_  Yes   ____ No

2.  Did this case originate from a matter pending in the Central Region of the United
    States Attorney's Office prior to April 1, 1999? ____Yes   _X_ No

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

BY:  _____

DAVID BUCKNER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 60550
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9006
FAX (305) 530-7976

N:\udd\pglenn\circular\complaint cover .wpd

AO 91 (Rev. 5/85) Criminal Complaint AUSA BUCKNER

# *United States District Court*

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

BASSAM GHARIB MAKKI
a/k/a Hassan Mohamad Makki

CASE NUMBER: *99-3464-STB*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about September 21, 1998, at Miami-Dade County, in the Southern District of Florida, the above defendant, having taken an oath before a competent tribunal, officer and person, that he would testify, declare, depose and certify truthfully, did willfully and contrary to such oath state and subscribe a material matter which he did not believe to be true, in that the defendant stated while under oath before a United States Magistrate Judge, that his name was Hassan Mohamad Makki, when in truth and in fact, and as the defendant then and there well knew, his true name was and is Bassam Gharib Makki; in violation of Title 18, United States Code, Section 1621.

I further state that I am a _____Special Agent_____ and that this complaint is based on the following
                                    Official Title
facts:

See Attached Affidavit

Continued on the attached and made a part hereof:    [x] Yes    [ ] No

Signature of Complainant JAMES D. COMBS
DIPLOMATIC SECURITY SERVICE - STATE DEPT.

Sworn to before me and subscribed in my presence,

_____11/4/99_____
Date

at __MIAMI-DADE COUNTY, FLORIDA__
   City and State

‿ STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

_UNITED STATES MAGISTRATE JUDGE_
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

JAMES D. COMBS, being first duly sworn on oath, deposes and states as follows:

1.　I am a Special Agent with the United States Diplomatic Security Service (DSS), and have been so employed for nine years. Since August, 1997, I have been assigned to the international terrorism squad, JOINT TERRORISM TASK FORCE, of the Miami, Florida, Division of the FBI.

2.　Prior to employment with the DSS, I was employed as the Assistant Regional Security Officer assigned to the U.S. Embassy in Ottawa, Canada.

3.　This affidavit is submitted in support of my application for a criminal complaint charging BASSAM GHARIB MAKKI, with perjury and false statements.

4.　All of the information contained in this affidavit is the result of either my own personal observations, investigation, and experience, or has been provided to me by other law enforcement authorities.

5.　On or about September 15, 1998, the Brazilian Consul General in Asuncion, Paraguay, informed the U.S. Embassy in Asuncion that a person identifying himself as Mohammad Gharib Makki and bearing U.S. passport number Z7189091, had appeared at the Brazilian Consulate in Asuncion to apply for a Brazilian tourist visa. The Consul General related that there were several aspects about the suspect that aroused suspicion. For example, the applicant had departed Lebanon on September 14, 1998, and applied for his Brazilian visa almost as soon as he arrived in Paraguay, which the Consul General believed was unusual and suspicious. In addition, the suspect's U.S. passport was a replacement to a lost or stolen passport. Further, the suspect seemed anxious to obtain his visa immediately.

6.　Mohammad Gharib Makki was then and remains a fugitive wanted for wire fraud, mail fraud and failure to appear in the Eastern District of New York.

7.　On September 18, 1998, the suspect was arrested by the Paraguayan National Police in Ciudad del Este, Paraguay, based upon the belief that he was the fugitive Mohamad Gharib Makki. Immediately after his arrest, he was flown to the Silvio Pettirossi International Airport in Asuncion, Paraguay, and taken to the airport immigration office. Immediately after he arrived, Special Agent Robert Wayne Starnes, United States Diplomatic Security Service conducted an interview of the suspect. SA Starnes conducted the interview in English and the

suspect appeared to understand the questions. The suspect also responded to the questions in English.

8.     Prior to the interview, SA Starnes advised the suspect of his Miranda rights. The suspect signed a form in the name of Mohammad G. Makki and, during the subsequent interview, stated that his name was, indeed, Mohammad G. Makki. Later, Detective Wayne T. Parola, New York City Police Department detailed to the New York Joint Terrorism Task Force and deputized as a Special Deputy United States Marshall, and Special Agent John G. Sorge, FBI, also interviewed the suspect at the airport and he again stated that his name was Mohammad G. Makki. When Det. Parola stated that he knew Mohammad G. Makki and that the suspect was obviously not the same person, the suspect admitted to Det. Parola and SA Sorge that his name was not Mohammad G. Makki and stated that his name was really Hassan Mohamad Makki. A fingerprint comparison of the suspect's fingerprints to known fingerprints of Mohammad G. Makki confirmed that the suspect was not Mohammad G. Makki.

9.     During a second interview by SA Starnes and SA Hector Rodriguez, FBI on 09/19/1998, the suspect again gave his name as Hassan Mohamad Makki. Suspect subsequently traveled to Miami, Florida where he was arrested on passport fraud.

10.     At his initial appearance on 9/21/1998 in the United States District Court for the Southern District of Florida, Miami Division before the Honorable Robert L. Dube, United States Magistrate Judge, the subject was sworn and the Court asked him for his full name. The subject stated that his name was Hassan Mohamad Makki.

10.     During the assimilation of the pretrial services report, the subject reiterated that his name was Hassan Mohammad Makki.

11.     At his removal hearing on 09/29/1998 before the Honorable Peter R. Palermo, United States Magistrate Judge, the Court, this time with the aid of an Arabic interpreter, again asked the suspect his true name in open court. The suspect, who had by now had the benefit of consulting with a Federal Public Defender, again stated that his name was Hassan Mohamad Makki.

12.     On 10/6/1998 SA Michael J. Hudspeth, Diplomatic Security Service, interviewed a confidential informant who positively identified a photograph of the suspect as neither Mohammad Gharib Makki nor Hassan Mohammad Makki but as Bassam Gharib Makki. The

informant added that Bassam Gharib Makki had a criminal record in Germany.

13.    By letter dated December 4, 1998 the Bavarian Ministry of Justice in Germany informed the Embassy of the United States that one Bassam Gharib Makki had indeed been convicted in the 1st Criminal Chamber of the Munich Landgericht I on December 22, 1989 of attempting to participate in a felony involving explosives.  German authorities confirmed that the same Bassam Gharib Makki was arrested in Germany in 1985 on an immigration charge.  A fingerprint comparison between known fingerprints of Bassam Gharib Makki from Germany taken in 1985 and those of the subject confirmed that the subject's true name is Bassam Gharib Makki.

14.  Based upon the above, your affiant has probable cause to believe that Bassam Gharib Makki committed perjury at his initial appearance before Magistrate Judge Dube by making a false statement under oath with regard to his identity in violation of Title 18 U.S.C. §1621

AFFIANT FURTHER SAYETH NAUGHT.


SPECIAL AGENT JAMES D. COMBS
DIPLOMATIC SECURITY SERVICE


Sworn to and subscribed
before me this 9 day
of November, 1999


UNITED STATES MAGISTRATE JUDGE

FILED
WILLIAMSPORT

NOV 1 1999

DMB:FEM:jmm  99R00774

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  : M/J NO. 99-MW-077-01
         v.                       :
                                  : (M/J Askey)
     BASSAM GHARIB MAKKI          :

### MOTION FOR DETENTION

**COMES NOW,** the United States of America by David M. Barasch,
United States Attorney for the Middle District of Pennsylvania,
and moves for pretrial detention of defendant, pursuant to 18
U.S.C. § 3142(e) and (f).

1. **Eligibility of Case.**  The prosecution is eligible for a
detention order because the Defendant is a serious risk of flight
and poses a danger, if released, to the safety of any other
person and the community.

2. **Reason for Detention.**  The Court should detain defendant
because there are no conditions of release which will reasonably
assure Defendant's appearance as required as well as the safety
of other person's and the community..

3. **Time for Detention Hearing.**  The United States requests this
Court to conduct the detention hearing, at the convenience of
this Court, counsel, in necessary, an interpreter, and witnesses
from Florida who are familiar with Defendant, and the offense.

WHEREFORE, for the above-stated reasons, it is respectfully requested that this Court conduct a detention hearing.


FREDERICK E. MARTIN
Assistant United States Attorney

Dated: November _17_, 1999

**ORDER**

**AND NOW** this _17th_ day of November 1999, it is hereby

**ORDERED** that a detention hearing as requested by the United States, will be conducted on _November 20_, 1999, at _2_ _47_. ____ o'clock in _Courtroom 1_, Williamsport, Pennsylvania.


WILLIAM H. ASKEY
United States Magistrate Judge

2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
MINUTES OF TRIAL OR HEARING

UNITED STATES OF AMERICA

v.

Bassam Gharib Makki

Case No.: 4:99-mw-77
Date: 11-17-99
1st day of trial/hearing

Hon. William H. Askey PRESIDING open court in Williamsport, PA
Nature of Hearing: Removal Hearing
Time Commenced 2:00     Time Terminated: 2:25

| PLAINTIFF | APPEARANCES | DEFENDANT |
|-----------|-------------|-----------|
| Frederick Martin AUSA | D Tom Byrd AFPD | |

PLAINTIFF'S WITNESSES:

FILED
PA
17 1999
MARY E...
Por...
Deputy...

DEFENDANT'S WITNESSES:

| | Exam'd | Cross | Exam'd | | Exam'd | Cross | Exam'd |
|---|---|---|---|---|---|---|---|

Remarks: Def present / Def requested Arabic interpreter
(Clerk directed to secure interpreter). Atty
Byrd proposed Def complete Financial Affidavit.
Atty Martin outlined nature of today's proceeding.
Atty Byrd appointed conditionally until financial
affidavit is completed. Interpreter to be
secured. Gov't moved for detention pending
further hearing.
Hearing scheduled for 11-22-99 @ 2: pm

MARY E. D'ANDREA, CLERK

TAPE RECORDED                    Rebecca A. Kuhns, Deputy Clerk
                                 Sylvia Hoss

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
MINUTES OF TRIAL OR HEARING

UNITED STATES OF AMERICA

V.

Bassam Tharis Makki

Case No.: 4:99-mw-77
Date: 11-22-99
2nd day of trial/hearing

Hon. William H. Askey PRESIDING open court in Williamsport, PA
Nature of Hearing Stop Continuation of Identity Hearing.
Time Commenced 2:10 pm        Time Terminated: _____

| PLAINTIFF | APPEARANCES | DEFENDANT |
|-----------|-------------|-----------|
| Frederick Martin, AUSA | | D. Toni Byrd, AFPD |

PLAINTIFF'S WITNESSES:

| | | |
|---|---|---|
| Timothy Coron | Exam'd | M) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |

DEFENDANT'S WITNESSES:

| | | |
|---|---|---|
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |
| | Exam'd | ) |
| Cross | Exam'd | ) |

Remarks: Court interpreter Hind Matthews present. Oath
administered to Matthews. Financial Affidavit discussed.
Dft. Duran. Govt. gives background. Defendant does not
wish to waive hearing. Rule 40 proceeding & detention
issue. Testimony. Probable Cause Established.
Dft. ordered to be held in custody of USM
and removed to district of jurisdiction (SDFL)

MARY E. D'ANDREA, CLERK
Rebecca A. Kuhns, Deputy Clerk

TAPE RECORDED

GOVERNMENT'S PENALTY PHASE LIST OF EXHIBITS

UNITED STATES OF AMERICA v. BASSAM GHARIB MAKKI

CR. NO. 99-MW-077-01

DATE: November 22, 1999

MAGISTRATE JUDGE ASKEY

MIDDLE DISTRICT OF PENNSYLVANIA

FILED
WILLIAMSPORT, F
NOV 22 1999
ANDREA, CL
Deputy Clerk

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | DOCUMENT DATED | IDENTIFIED IN COURT | DATE ADMITTED | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 1 | | Transcript of Appearance | 9/21/98 | 11-22-99 | | Tract |
| 2 | | Presentence Report | 2/5/99 | | | |
| 3 | | Statement to Sentencing Court | Undated | | | |
| 4 | | Judgment & Commitment Order | 4/25/99 | 11-22-99 | | |
| 5 | | SENTRY Printout for Bassam Gharib Makki, Reg. No. 58753-004 | 1998 and 1999 | 11-22-99 | | Tract |
| 6 | | Opinion of Judge Friedman | 4/20/99 | 11-22-99 | | Tract |
| 7 | | Brazilian VISA Application | 9/15/98 | | | |
| 8 | | German Conviction | 12/22/89 | | | |
| 9 | | Progress Report | 8/17/99 | 11-22-99 | | Tract |
| | | . | | | | |

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3

 4

 5   UNITED STATES OF AMERICA,            No: 98-3533-DUBE

 6            Plaintiff,                  September 21, 1998
                                          Miami, Florida
 7        v.

 8   HASSAN MOHAMAD MAKKI,

 9            Defendant(s).

10   _____/

11

12            TRANSCRIPT OF INITIAL APPEARANCE HEARING
               BEFORE THE HONORABLE ROBERT L. DUBE',
13              UNITED STATES MAGISTRATE JUDGE.

14

15   APPEARANCES:

16   For the Plaintiff:         JOHN LOO
                                 Asst. U.S. Attorney
17                               99 N.E. 4th Street
                                 Miami, Florida 33132-2111
18

19   For the Defendant(s):      KRISTA HOLLIS
                                 Assistant Federal Public Defender
20

21

22        .

23   Transcriber:               E. Lawton
24

25
```

Jack Besoner & Associates
Suite 220
172 West Flagler Street
Miami, Florida 33130

GOVERNMENT EXHIBIT /

1          THE CLERK:  The United States of America vs.

2   Hassan Mohamad Makki, 98-3533-Magistrate Judge Dube'.

3          THE COURT:  Do you have an attorney, sir?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you want the Court to appoint on

6   for you?

7          THE DEFENDANT:  Yes.  But before that maybe may--I

8   need a translator from Arabic to English.  May I understand,

9   but not all.

10          THE COURT:  (Aside) I don't think there is any

11   indication of that.  He's out of the district.  This is no

12   big deal.  In English and Arabic.

13          THE CLERK:  Well, he can go ahead today, and I'll

14   order that.

15          THE COURT:  Yeah.  What we are going to do, sir,

16   is appoint counsel for you.  And then, when it comes up to a

17   full-blown hearing, we'll see if we can't get an interpreter

18   for you.  In fact, we will get an interpreter for you.  But

19   I indicate from the record that you speak both Arabic and

20   English.

21          THE DEFENDANT:  Yes, but--

22          THE COURT:  Okay.

23          THE DEFENDANT:  Sometimes I don't understand good.

24   This is an--

25          THE COURT:  Okay.

3

```
 1              THE DEFENDANT:  --important thing.

 2              THE COURT:  But you do want a lawyer, don't you?

 3              THE DEFENDANT:  Uh, please?

 4              THE COURT:  You want the Court to appoint a lawyer

 5    for you?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  Okay.

 8              THE DEFENDANT:  I know nobody here in U.S.A.  I

 9    have never been here.

10              THE COURT:  Well, I'm going to get you a lawyer in

11    a minute here if you answer some questions.

12              THE CLERK:  Raise your right hand, sir.

13         THE DEFENDANT, SWORN.

14              THE COURT:  Okay.  And for the record, sir, would

15    you give us your full name and address.

16              THE DEFENDANT:  My full name?

17              THE COURT:  Yeah.

18              THE DEFENDANT:  Hassan Mohamad Makki.  Address in

19    Beirut--

20              THE COURT:  (Aside) Lebanon.

21              THE DEFENDANT:  Lebanon.  Harat Hanake (phonetic).

22              THE COURT:  And how old are you, sir?

23              THE DEFENDANT:  30 years old.

24              THE COURT:  Are you married?

25              THE DEFENDANT:  Yeah.
```

1          THE COURT:  Do you have any children?

2          THE DEFENDANT:  Yeah.

3          THE COURT:  How many?

4          THE DEFENDANT:  Three.

5          THE COURT:  And how old are they?

6          THE DEFENDANT:  The oldest is six years old, and

7    then three years old, and one years old.

8          THE COURT:  Do you have any bank accounts

9    anyplace?

10          THE DEFENDANT:  Any?

11          THE COURT:  A bank--do you have money in a bank

12    any place?

13          THE DEFENDANT:  In Lebanon.

14          THE COURT:  And how much do you have in Lebanon?

15          THE DEFENDANT:  About 10,000.

16          THE COURT:  And what's that in American?

17          THE DEFENDANT:  About $10,000 U.S. dollar.

18          THE COURT:  U.S. dollars?

19          THE DEFENDANT:  About.

20          THE COURT:  Okay.  I think you probably can hire

21    your own lawyer, but I think what we are going to do

22    temporarily is to appoint a federal public defender.  And

23    then as soon as we can establish contact with a lawyer of

24    your own choice, then we'll allow the federal public

25    defender to withdraw.

1          MS. HOLLIS:  Krista Hollis, Assistant Federal

2    Defender, accepting the appointment.

3          THE COURT:  This is a warrant and complaint out of

4    District of Columbia on passport fraud.

5          Have you got something for her?

6          THE CLERK:  Yes, sir.

7          THE COURT:  What's the government's position in

8    this case?

9          MR. LOO:  Good afternoon, your Honor.  Jonathan

10   Loo for the United States.  The United States will be

11   seeking pretrial detention based on risk of flight.  We

12   would ask for the three days.

13         THE COURT:  Okay.

14         MR. LOO:  For the pretrial detention and a removal

15   hearing to the District of Columbia.

16         THE COURT:  I think we ought to be able to resolve

17   the attorney question within that period, I hope.

18         MS. HOLLIS:  I hope so, too, your Honor.  And I

19   also--I will try to speak with Mr. Makki tomorrow through

20   the aid of an interpreter.

21         THE COURT:  Right.

22         MS. HOLLIS:  And see if I can convey--

23         THE COURT:  Okay.  We appreciate that.

24         MS. HOLLIS:  --the attorney status.

25         THE CLERK:  Removal and Detention Hearing on

1  September 24th at 10:00 a.m.

2          MS. HOLLIS:  Thank you.

3          THE COURT:  Thank you.

4      (Whereupon the hearing was concluded.)

5                  - - - - -

6          I HEREBY CERTIFY that, the foregoing is a correct

7  transcript from the electronic sound recording of the

8  proceedings in the above-entitled matter.

9

10

11

12  _____          _____

13      Transcriber                      Date

14

15

16

17

18

19

20

21

22

23

24

25

Jack Besoner & Associates
Suite 220
172 West Flagler Street
Miami, Florida 33130

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )PRESENTENCE INVESTIGATION REPORT |
| | ) |
| Bassam Gharib Makki | )Docket No. CR 98-334-01 |

**Prepared for:**          The Honorable Paul L. Friedman
                          United States District Judge

**Prepared by:**          George Neal, Jr.
                          United States Probation Officer
                          (202) 565-1357

| <u>Assistant U.S. Attorney</u> | <u>Defense Counsel</u> |
|---|---|
| Tina Sciocchetti | Teresa Alva, Asst. Federal Public Defender |
| The Judiciary Center Building | 625 Indiana Avenue, N.W., Suite 550 |
| 555 Fourth Street, N.W. | Washington, D.C. 20004 |
| Washington, D.C. 20001 | (202) 208-7500 |
| (202) 616-2139 | |

**Sentence Date:**        February 12, 1999, at 9:00 a.m.

**Offense:**              <u>Counts 1 and 2</u>:  Misuse of a Passport (18 U.S.C. § 1544) - Not
                         more than 10 years/$250,000 fine

                         <u>Count 3</u>:  Possession of False Document Prescribed by Statute
                         and Regulation for Entry Into and Evidence of Authorized Stay and
                         Employment in the United States {18 U.S.C. § 1546(a)} - Not
                         more than 10 years/$250,000 fine

**Release Status:**       Arrested September 18, 1998; arrest warrant issued on September
                         19, 1998; warrant executed on September 24, 1998; ordered held
                         without bond on November 3, 1998, in which status he remains.

**Related Cases:**        None

**Date Report Prepared:** 01-22-99
**Date Report Revised:**  02-05-99

GOVERNMENT
EXHIBIT
2

The special conditions ordered by the Court are as follows:

4/12/99: Ct.1,2,3 - 16 months on each count concurrently; Ct.1,2,3 - 3 years supervised release; $300 Special
Assessment; defendant shall cooperate fully with the Immigration and Naturalization Service.

**MAKKI, Bassam Gharib**                                    **Page 2**

| | |
|---|---|
| **Detainers:** | Immigration and Naturalization Services |
| **Codefendants:** | None |

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | July 25, 1967 |
| **Age:** | 32 |
| **Race:** | White, non-Hispanic |
| **Sex:** | Male |
| **SSN:** | None Assigned |
| **FBI No.:** | None Assigned |
| **U.S. Marshal No.:** | 58753-004 |
| **Other ID Nos.:** | PDID 507 714 |
| | DCDC 279 091 |

| | |
|---|---|
| **Education:** | Some College |
| **Marital Status:** | Married |
| **Dependents:** | Five |
| **Citizenship:** | Lebanon |
| **Legal Address:** | District of Columbia Jail |
| **Aliases:** | Bassam Gharib Makki (true name) |
| | Hassan Mohamad Makki |



**PACTS # 10981**

**MAKKI, Bassam Gharib**                                                    **Page 3**

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.  On December 15, 1998, a three-count Superseding Indictment was filed in the United
    States District Court for the District of Columbia, charging Bassam Gharib Makki, also
    known as Hassan Mohamad Makki, in Counts 1 and 2, Misuse of a Passport, 18 U.S.C.
    § 1544.  Count 3 charged Possession of a False Document Prescribed by Statute and
    Regulation for Entry Into and Evidence of Authorized Stay and Employment in the United
    States, 18 U.S.C. § 1546(a).  The offense conduct occurred on or about September 15,
    1998.

2.  On December 16, 1998, Bassam Gharib Makki pled guilty to all three counts of the above
    Indictment.  Sentencing is scheduled for February 2, 1999.

### The Offense Conduct

3.  The Government's investigation revealed that on September 14, 1998, defendant Bassam
    Gharib Makki flew from Lebanon to Paraguay using a United States passport in the name
    of United States citizen Mohamad Gharib Makki.  Defendant Makki had altered the valid
    official document by substituting his photograph for that of the true passport holder.  After
    arriving in Asuncion, Paraguay, on September 15, 1998, the defendant registered with
    immigration officials at the airport under the name of Mohamad Gharib Makki.  He then
    proceeded to the Brazilian Consulate in Asuncion and requested a visa to enter Brazil.  In
    support of this request, the defendant presented the altered United States passport to the
    consulate officials and claimed to be Mohamad Makki.  There was no signature of the
    bearer on the passport.

4.  Brazilian consulate officials were suspicious of defendant's claim of United States
    citizenship and asked him questions about the passport and his citizenship.  Defendant
    Makki maintained that he was Mohamad Makki, that he lived in New York, and that the
    passport belonged to him.  The consulate officials asked the defendant to sign the
    passport, but he refused to do so.  They ultimately told the defendant that his visa
    application would take time to process, to which he replied that he was traveling to the
    city of Ciudad del Este, Paraguay, and would apply for his Brazilian visa at the consulate
    there.

5.  The following day, defendant Makki presented himself at the Brazilian Consulate in
    Ciudad del Este and again sought a Brazilian visa.  He completed an application for the
    visa, again claiming to be the United States citizen Mohamad Makki and answering the

questions on the application, as if he were that person. Defendant Makki presented the altered United States passport in support of his application, and a consulate official stamped the passport to indicate that a visa application was pending. Defendant Makki had since placed a signature for "Mohamad Makki" on the altered passport. The consulate official handling the defendant's application requested that he provide proof of his return travel from Brazil, and he submitted to her a copy of airline tickets in the name of Mohamad Makki. The consulate official told the defendant that his visa would be ready in two days.

6.   On September 18, 1998, defendant Makki returned to the Brazilian Consulate in Ciudad del Este to pick up the visa he had requested. He again tendered the altered United States passport in support of the application. After waiting for the visa document for some time, he demanded the return of "his" passport (the altered document) and left the Consulate. He was arrested outside the Consulate, and Paraguayan police officers recovered the altered United States passport from his shirt pocket.

7.   Subsequent to his arrest, defendant Makki continued to claim to Paraguayan and United States police officials to be Mohamad Makki until, through fingerprints and photo comparisons, Federal Bureau of Investigation agents determined that the defendant was not Mohamad Makki. Defendant Makki then claimed to be Lebanese-born Hassan Mohamad Makki, the cousin of Mohamad Makki. Defendant Makki admitted that he knew the passport was not his and stated that he had stolen it from his cousin. He claimed that he had traveled to Paraguay in hope of establishing a business to import computers to Lebanon.

8.   Upon learning of the defendant's illegal use and possession of the forged United States passport, the government obtained a criminal complaint and arrest warrant for him in the District of Columbia. He was flown to the United States and appeared before a United States Magistrate Judge in Miami, Florida, for a Removal Hearing. Throughout these Court proceedings, the defendant claimed to be Hassan Mohamad Makki and provided personal information for that alleged person to the Court and to the Pretrial Services Agency.

9.   After the Indictment was returned, the government learned through fingerprint and photographic analysis that the defendant was once again misrepresenting his true identity. Defendant Makki is, in fact, a Lebanese citizen named Bassam Gharib Makki, born in Lebanon on July 25, 1967. He is the brother of the original passport holder.

11/16/99   15:33   ☎717 547 6299                    ALP LSM                    ☒001

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**   # of pages ►  1

| To | Sandy | From | S. Snyder | **Page 5** |
|---|---|---|---|---|
| Dept./Agency | | Phone # | 547-0963 | |
| Fax # | 870-323-5862 | Fax # | | |

NSN 7540-01-317-7368   5099-101   GENERAL SERVICES ADMINISTRATION

**MAKKI, Bassam Ghari**

**Victim Impact**

10.   There is no discernible victim in this case.

### Adjustment for Obstruction of Justice

11.   During the pretrial detention/removal hearing in the United States District Court for the Southern District of Florida, the defendant, when asked by the Court for his true name, stated that his name was Hassan Mohamad Makki.  He maintained this position at hearings on September 21 and 29, 1998.

12.   In addition to providing the Court with this false information, he provided the same information to the United States Pretrial Services Agency in the Southern District of Florida.

### Adjustment for Acceptance of Responsibility

13.   The defendant disagrees with certain portions of the government's "Proffer of Facts" in this case. First, the defendant denies that he altered the United States passport, but rather that the passport had been altered. Second, he denies that subsequent to his arrest that he continued to claim to be Mohamad Makki, until the Federal Bureau of Investigation agents determined that he was not Mohamed Makki. Third, Mr. Makki disputes the government's contention that throughout his Court proceedings he claimed to be Hassan Mohamad Makki and that he provided personal information for that alleged person to the Court and to the Pretrial Services Agency.

14.   During the interview with the probation officer, Mr. Makki admitted to stealing his brother's passport with the intention of using it to travel to Brazil for business purposes. He asserts that the reason he did not use his real name was due to a criminal conviction he obtained in Germany in 1989. He assumed the name Hassan Mohamad Makki due to the great shame he felt and the potential problems that he would face in his country due to his conviction. His conviction was reported in the local press in his country. Consequently, he felt that he needed a new identity if he was going to have any type of a normal life in Lebanon.

### Offense Level Computation

15.   The 1998 edition of the *Guidelines Manual* has been used in this case.

MAKKI, Bassam Gharib                                                    Page 6

16.   Counts 1, 2, and 3 are grouped together, pursuant to U.S.S.G. § 3D1.2(a) because they
      involved the same victim and the same act or transaction.

17.   **Base Offense Level:** The guideline for violation of 18 U.S.C. §§ 1546(a) and 1544 is
      found in U.S.S.G. § 2L2.2. This section provides for a base offense level of 8.                      <u>8</u>

18.   **Specific Offense Characteristics:** None                                                            <u>0</u>

19.   **Victim-Related Adjustment:** None                                                                   <u>0</u>

20.   **Adjustment for Role in the Offense:** None                                                          <u>0</u>

21.   **Adjustment for Obstruction of Justice:** During two detention hearings and to the
      Pretrial Services Agency, the defendant provided materially false information as to his
      true identity.  As such, two levels are added, pursuant to U.S.S.G. § 3C1.1.                          <u>+2</u>

22.   **Adjustment for Acceptance of Responsibility:** Although the defendant pled guilty to all
      three counts in the Indictment, he has not accepted  personal responsibility for his conduct
      as noted by the two level enhancement, pursuant to U.S.S.G. § 3C1.1. Therefore, no
      adjustment is made, pursuant to U.S.S.G. § 3E1.1(a).                                                  <u>0</u>

23.   **Adjusted Offense Level (Subtotal):**                                                                <u>10</u>

24.   **Chapter Four Enhancements:** None                                                                   <u>0</u>

25.   **Total Offense Level:**                                                                              <u>10</u>

      <u>**Offense Behavior Not Part of Relevant Conduct**</u>

26.   On September 23, 1993, the defendant entered the American Consulate in Damascus,
      Syria, and filled out a Visa application. In doing so, he provided a false, sworn statement
      under penalty of  perjury that he had never been convicted of a crime.  He received a
      conviction in Germany for a crime involving moral turpitude in 1989.

27.   In addition to the above, when the defendant was detained in Paraguay, he had, in his
      possession, his brother's social security card.[1]

---

[1]Mr. Makki is neither admitting nor denying what is contained in these paragraphs.

MAKKI, Bassam Gharib                                                                Page 7

## PART B.  THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

28.  None known.

### Adult Criminal Conviction(s)

29.  None

### Criminal History Computation

30.  The total criminal history points is 0.  According to the Sentencing Table (Chapter 5, Part A), 0 or 1 criminal history points establish a criminal history category of I.

### Other Criminal Conduct

31.  On June 22, 1989, the defendant was arrested in Munich, Germany, and charged with Attempting in the Participation in Bringing About an Explosion.  On December 22, 1989, he was sentenced to 2 years jail.  The defendant was represented by counsel.

The trial produced the following facts of the case:

The defendant is an opponent of the State of Israel and of the United States of America, which supports this State.  For an undetermined time he has had connections with similarly-minded persons or organizations in Beirut, Lebanon, who engage in or have an interest in preparing and executing bomb attacks against Israeli, Jewish, or American installations in the Federal Republic of Germany or in having such attacks prepared and executed.

The defendant reconnoitered suitable targets as ordered and on his own initiative and offered to undertake the executions of such attacks or at least to collaborate as an accomplice.  For this purpose, he was in Munich on September 19, 1988, and photographed three buildings designated for attack.  He sent a letter in code with photographs of the targets.  The codes for information detailed in the letter was found in the defendant's apartment.

According to information contained in the file, Mr. Makki was released from custody on July 22, 1990, and deported to Syria a year before his sentence was due to expire.  Mr. Makki had claimed asylum before his arrest and the German authorities did not want the

**MAKKI, Bassam Gharib**                                                    **Page 8**

possibility of his remaining in the country after his sentence expired. Mr. Makki agreed to drop his request for asylum and to accept early deportation, in exchange for his early release.

The defendant admitted the activities charged to him, but claims to have acted under duress. He indicated that while he has no sympathy for the Israeli occupation force, he is neither a terrorist nor does he support such activities.

Mr. Makki stated in the interview with the probation officer that not only was he threatened but also his family in Lebanon were threatened by individuals who did not identify themselves. Mr. Makki stated that out of fear he had gone to an immigration officer and foreign students case manager at the university. He admitted committing some of the activities, such as taking photographs. Mr. Makki did not know the purpose of the activities.

In addition, he said that he appealed the conviction and that when the Germany government offered to release him in exchange for withdrawing the appeal, Mr. Makki accepted. Mr. Makki stated that if he knew then what the consequences this conviction would have in his future he would not have withdrawn the appeal.

## PART C.  OFFENDER CHARACTERISTICS

### Personal and Family Data

32.   The defendant was born on July 25, 1967, in Bint-J'beil in South Lebanon and grew up with his six siblings. His parents are Fatima and Gharib Makki. His father died 2 years ago from cancer. He was employed with the city administration in Beirut. His mother lives in Beirut and never worked outside the home.

33.   The defendant described a close family unit. He stated that the family's economic disposition was not good when he was a child. However, his older brother financially contributed to the family.

34.   The defendant has seven siblings who all reside in Lebanon. His siblings are Mosa Makki, age 40; Mohamad Makki, age 38[2]; Issam Makki, age 37; Haza Makki was killed in the country's civil war in 1984; Gassan Makki, age 30; Wesal Makki, age 35; and Yasmin Makki, age 24.

---

[2]The defendant's brother has a pending Indictment in the Eastern District of New York for Wire Fraud, Mail Fraud, and Bail Jumping.



**MAKKI, Bassam Gharib**                                                   **Page 9**

35.   The defendant indicates that he has been married twice.  He claims that his first wife
      divorced him because of the threats that he and she received from militia groups in
      Lebanon. They married in 1988, and were divorced one year later in 1989.  No children
      were born to this union.  In 1991, the defendant said that he married Zeinab Hoteit Sted,
      age 28.  The marriage has produced four children.  His children are Hassan Makki, age
      7; Fatima Makki, age 4; Yasir Makki, age 3; and Basil Makki, age 3.  The latter two
      children are twin boys.

36.   The Immigration and Naturalization Services has lodged a detainer.

**Physical Condition**

37.   The defendant stands 5 feet 11 inches tall and weighs 143 pounds.  He has black hair and
      brown eyes.  He reported no current or past health problems.

**Mental and Emotional Health**

38.   The probation officer has no information indicating that the defendant is suffering from
      any past or current mental health problems.

**Substance Abuse**

39.   Mr. Makki denied the use of any illegal drugs and the abuse of alcohol.

**Educational and Vocational Skills**

40.   The defendant graduated from Ghubainy High School in Beirut, Lebanon, in 1985. On
      December 2, 1985, the defendant traveled via Berlin to the Federal Republic of Germany
      as an applicant for asylum.  After he learned that as someone given asylum, he would not
      be able to undertake studies in the Federal Republic of Germany for the foreseeable
      future, he went back to Lebanon - with financial support from a church organization - and
      applied successfully from there for admission as a student in Germany.  After withdrawing
      his request for asylum, he received a resident permit in April 1988 for study purposes and
      studied physics up to his provisional arrest on June 22, 1989, at the Technische
      Hochschule (Institute of Technology) in Darmstadt, Germany.   He received a full
      scholarship from the Hariri Foundation.

MAKKI, Bassam Gharib                                                                    **Page 10**

41.     Also, after his release in Germany, from approximately 1990 to 1992, Mr. Makki said he
        continued his physics studies in Lebanon at the Lebanese University. In addition, the
        defendant reported that he attended a private institute to learn computer programing and
        computer assembly.

### Employment Record

42.     The defendant noted that at the time of his arrest, he was self-employed. He indicated that
        he owns an Internet Center (computer business) in Lebanon. He reported a monthly
        income of $1,000. He commenced this business in 1997.

43.     Prior to the above employment, the defendant reported employment with the Computer
        Center in Beirut, Lebanon, from 1992 to 1996, as a manager/salesperson.

44.     From 1990 to 1991, the defendant indicated that he was student.

45.     From 1989 to 1990, the defendant was incarcerated.

### Financial Condition: Ability to Pay

46.     During the interview with the probation officer, Mr. Makki reported that he co-owns a
        computer company and that he owns his apartment. In addition, he owns a car and has
        a saving accounts (approximately $10,000). Based on the foregoing, it does appear that
        he has the ability to pay a court ordered fine.

## PART D.     SENTENCING OPTIONS

### Custody

47.     **Statutory Provisions:** Counts 1, 2, and 3: Not more than 10 years, a Class C felony. 18
        U.S.C. § 1546(a)

48.     **Guideline Provisions:** Based on a total offense level of 10, and a criminal history
        category of I, the guideline imprisonment range is 6 to 12 months. If the applicable
        guideline range is in Zone B of the Sentencing Table, the minimum may be satisfied by
        (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of
        supervised release with a condition that substitutes community confinement or home
        detention, according to the schedule in subsection (e), provided that at least one month
        is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or
        combination of conditions that substitute intermittent confinement, community
        confinement, or home detention for imprisonment, according to the schedule in subsection
        (e).

MAKKI, Bassam Gharib                                                    Page 11

### Supervised Release

49.   **Statutory Provisions:** Counts 1, 2, and 3: Not more than 3 years.  18 U.S.C. §
      3583(b)(2).

50.   **Guideline Provisions:** Counts 1, 2, and 3: At least 2, but not more than 3 years.
      U.S.S.G. § 5D1.2(a)(2).

### Probation

51.   **Statutory Provisions:** Counts 1, 2, and 3: The defendant is eligible for probation by
      statue.  The term shall be no less than 1 year nor more than 5 years.  18 U.S.C. §
      3561(c)(1).

52.   **Guideline Provisions:** Counts 1, 2, and 3: The defendant is eligible for probation for a
      term of at least 1 year nor more than 5 years.  U.S.S.G. § 5B1.2(a)(1).

### Fines

53.   **Statutory Provisions:** Counts 1, 2, and 3: - The maximum fine is $250,000.  18 U.S.C.
      § 3571(b)(3).

54.   A special assessment of $100 is mandatory on each count of conviction for a total of
      $300.  18 U.S.C. § 3013.

55.   **Guideline Provisions:** The minimum fine is $2,000, and the maximum fine is $20,000.
      U.S.S.G § 5E1.2(c)(3).

### Restitution

56.   There is no restitution owed in this case.

## PART E.   FACTORS THAT MAY WARRANT DEPARTURE

57.   Presentation of information in this section does not necessarily constitute a
      recommendation by the probation officer.

58.   Pursuant to U.S.S.G. § 5K2.0, the sentencing Court may consider a downward departure
      from the applicable guideline range established by the United States Sentencing
      Commission if aggravating or mitigating circumstances are present, which were not
      adequately taken into account by the United States Sentencing Commission.  Based on
      this premise, in *United States v. Renford George Smith, 93-3012*, the United States Court

MAKKI, Bassam Gharib                                                            Page 12

of Appeals for the District of Columbia Circuit, decided on July 8, 1994, that "a sentencing Court may depart below the range indicated by the Sentencing Guidelines where the defendant, solely because he is a deportable alien, faces a prospect of objectively more severe prison conditions than would be otherwise." Like the appellate, the defendant is a citizen of another country, and based on the instant offense, is considered deportable alien. As such, his status as a "deportable alien renders him almost certainly ineligible for benefits of 18 U.S.C. § 3624(c), which directs the U.S. Bureau of Prisons to the extent practicable to assure that prisoners spend part of the 10% of the sentence, but not more than 6 months, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his reentry into the community." The Bureau of Prisons' regulations bar illegal aliens from assignment to a community corrections center, except in rare circumstances. In addition, the Bureau of Prisons' policy prevents the defendant from being assigned to serve any part of his sentence in a minimum security prison, subject to the same expectations as community confinement.

59.   U.S.S.G. § 4A.1.3 Adequacy of Criminal History Category - If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning: (1) prior sentence (s) not used in computing the criminal history category (e.g. sentences for foreign and tribal offenses) and prior similar adult criminal conduct not resulting in a criminal conviction.

Respectfully submitted,

RICHARD A. HOUCK, JR.
CHIEF U.S. PROBATION OFFICER

By: _George Neal, Jr. (signature)_
George Neal, Jr.
United States Probation Officer

Approved:

_Tobin P. Sullivan (signature)      2/5/99_
Tobin P. Sullivan                    Date
Supervising United States Probation Officer

**MAKKI, Bassam Gharib**                                                 **Page 13**

## ADDENDUM TO THE PRESENTENCE REPORT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## UNITED STATES V. BASSAM GHARIB MAKKI, DKT NO. CR 98-334

The presentence report was disclosed to all counsel on January 22, 1999.

Assistant United States Attorney Tina Sciocchetti submitted the Receipt and Acknowledgment form to the United States Probation Office on February 3, 1999.

Assistant Federal Public Defender Teresa Alva submitted the Receipt and Acknowledgment form to the United States Probation Office on February 3, 1999.

## OBJECTIONS

### By the Government

Assistant United States Attorney Tina Sciocchetti reviewed a copy of the presentence report and noted several factual/material inaccuracies. We agreed with counsel on several of the factual inaccuracies and amended the presentence report. However, the remaining issues are submitted here for the record and don't impact guideline calculations.

Page 1: The statutory maximum penalties for counts 1-3 are 25 years if the offense was committed to facilitate an act of international terrorism, 20 years if the crime was committed to facilitate a drug trafficking crime, 15 years if the offense is the defendant's third or subsequent conviction under the statute, or 10 years if none of the above applies. The government agrees that the maximum fine is $250,000.

Page 4, paragraph 7: Subsequent to his arrest, defendant Makki continued to claim, to Paraguayan and United States police officials, that he was Mohamad Makki. Alluding to Mohamad Makki's flight from an indictment in the E.D.N.Y., defendant stated that he had turned in his passport to the U.S. courts in New York, then left the country using his Lebanese passport. He claimed that he did not know that he could not leave the country after he relinquished his passport to the court. When FBI agents from New York arrived in Paraguay to take Mohamad Makki back to the United States, he told these agents that he was Hassan Mohamad Makki, the cousin of Mohamad Makki. He stated that he had stolen the passport from his cousin, knew it was wrong, and wanted to return to Lebanon. The FBI confirmed that defendant was not Mohamad Makki through a fingerprint comparison of the defendant to the photograph in Mohamad Makki's original passport. The defendant provided, to all law enforcement agents, a date of birth and other identity information for "Hassan Makki" that does not match the information he has provided to the

**MAKKI, Bassam Gharib**                                    **Page 14**

presence report writer. In addition, he stated that Bassam Makki was his cousin. Defendant claimed that he had traveled to Paraguay in hope of establishing a business to import computers to Beirut.

Page 5, paragraph 11: The defendant told the court, in Miami, that he was 30 years old, with a date of birth of 6/6/68; that he had three children aged 6, 3 and 1; and that he had $10,000 in a bank in Lebanon. This contradicts information provided to the presentence report writer.

Page 5, paragraph 12: The defendant provided this same false information to the Pretrial Services Agency in Florida and also told that Agency that he had a valid passport that had been confiscated by agents.

Page 5, paragraph 14: It is the government's understanding that defendant disavowed to the presentence report writer any knowledge of the circumstances of his brother's passport and pending charges in New York. In light of defendant's contrary statements to this effect after his arrest, the government would like this fact noted for the court.

In addition, the government disputes the facts set forth in paragraph 14, and submits that it is further evidence of the defendant's non-acceptance of responsibility. The government intends to present, to the Court, information in its sentencing memorandum, along with supporting evidence, setting forth the basis for this dispute.

Page 6, paragraph 21: The defendant also provided materially false information to law enforcement agents that significantly impeded the official investigation of the instant offense and, as demonstrated in the objections contained herein, has provided materially false information to the presentence report writer.

Page 6, paragraph 26: The government believes that this paragraph should be included under defendant's "other criminal conduct" on pages 7-8. In addition, it requests that the following description of the criminal conduct be substituted for this paragraph:

While he was detained in Germany, pending trial in September, 1989, defendant's father, who had legal status in the U.S., petitioned for an immigration visa for the defendant to come to the U.S. If approved, the visa would have allowed the defendant to stay in the United States as a permanent resident alien immediately upon his arrival here, and ultimately would have enabled him to obtain United States citizenship. The defendant's father (and his brother Moussa Makki who filled out the form) lied under penalty of perjury on the application, stating that defendant's address was in Beirut, Lebanon, instead of the detention center in Germany, and that the defendant was single and had never been married. On the basis of this false information, the State Department approved this application.

On February 13, 1991, defendant entered the American Consulate in Damascus, Syria, and presented his Application for Immigration Visa and Alien Registration. Under penalty of perjury, defendant made numerous false statements on the application (and statements that contradict his statements to the presentence report writer here), including 1) that he was single (never married); 2) that his occupation was as a student (in the PSR, defendant claims that he was working as a manager/salesperson at the "Computer Center" in Beirut from 1992-1996); 3) that he has no children (in the PSR, defendant claims to have a seven-year-old son) 4) failing to mention that he speaks fluent German (the German court noted that defendant speaks fluent German); 5) that he lived in Beirut since he was born, despite the fact that he lived in Germany twice; and 6) that he had never "been arrested, convicted or ever been in a prison..." The defendant swore to the truthfulness of the information contained in the application and signed the same in the presence of a State Department consular officer.

When the State Department reviewed defendant's application, his prior conviction in Germany was discovered and his application was rejected. On October 28, 1993, defendant returned to the U.S. Embassy in Syria to pursue the denial of his immigration visa. The defendant claimed that the information the embassy had about his prior conviction was incorrect, and asserted that he encountered minor difficulties with the German authorities, but that the Germans let him leave the country. The defendant insisted that he had not been convicted of a crime in Germany. The State Department did not issue the defendant a visa.

Because the defendant lied about his identity when he was arrested for the instant offense, these offense were discovered only after the government proved the defendant's true identity and his prior conviction, in November, 1998. By that time, prosecution of this offense was time-barred.

Page 8, paragraph 31: The government would like the writer to note that in the defendant's official German conviction document, a certified copy of which will be provided to the Court, the German court specifically discredited, and discussed the contrary proof of, the defendant's claim that he acted under duress.

Page 9, paragraphs 41 and 42: The government disputes that the defendant was self-employed as the owner of "Internet Center" in Lebanon, and that he worked with the "Computer Center" from 1992 to 1996. The government notes that there are no telephone listings for such businesses in Beirut, and no business "Internet Center" appears on the Internet as a service provider in Lebanon. Neither does defendant's name (either as Hassan or Bassam) even come up in a search of the Internet, including the Internet white pages for Lebanon. Finally, the government consulted the financial controller (the person who does all billing and accounts receivables) for the largest Internet service provider in Lebanon, which is located in Beirut, and that person stated that neither he/she, nor anyone else in the office, had ever heard of the defendant. The government will provide proof of this to the Court in its memorandum in aid of sentencing in the form of an affidavit and other documentary evidence.

**MAKKI, Bassam Gharib**                                          **Page 16**

Page 9, paragraph 43: The government disputes this fact and notes that no specific academic enrollment information is provided by the defendant.

Page 10, paragraph 45: The government disputes that defendant has no assets and cannot pay a fine.

<u>Probation Officer's response</u>

This paragraph has been changed to reflect the defendant's financial condition.

<u>By the Defendant</u>

Assistant Federal Public Defender Teresa Alva reviewed a copy of the presentence report and noted several factual/material inaccuracies. We concurred with counsel on several of these issues and amended the presentence report. However, several issues remain unresolved. We are submitting these issues here for the record.

Page 4, paragraph 7: It is reported that Mr. Makki continued to claim to be "Mohamad Makki" until, through fingerprints and photo comparisons, the FBI determined he was not. Although Mr. Makki initially claimed to be "Mohamad Makki" when he was arrested, he then told the police that he was not. For clarification, Mr. Makki did not give the name "Hassan Makki" only when confronted with the results of the fingerprints and photo comparisons results, as implied in this paragraph, but rather gave the name "Hassan Makki" upon being asked his name.

<u>Probation Officer's response</u>

We believe the dispute regarding this issue is sufficiently noted on page 5, paragraph 13 of the presentence report.

On Page 6, paragraph 21: The defense objects to the two level enhancement for obstruction of justice under section 3C1.1 of the sentencing guidelines.

**MAKKI, Bassam Gharib**                                                      **Page 17**

### Probation Officer's response

During the entire judicial process, the defendant provided false information as to his true identity. His true name is Bassam Gharib Makki. It was not until later that the government determined his real identity.

CERTIFIED BY:

RICHARD A. HOUCK, JR.
CHIEF U.S. PROBATION OFFICER

By: _____

George Neal, Jr.
U.S. Probation Officer

Approved:

_____ 2/5/99
Tobin P. Sullivan        Date
Supervising U.S. Probation Officer



GOVERNMENT
EXHIBIT
3
PENGAD-Bayonne, N. J.

1/4

Dear Judge Friedman

My name is Bassam Gharib Makki, born on July 25th 1967 in Bintzbeil/Lebanon, grew up and still live in a good supportive familial and social atmosphere. After finishing my Highschool I recieved a scholarship from Hariri-Founda (Lebanese Ministerpresident) for a diplom-degree (B.S.) in Physics at german universities. I learned to help other people by teaching them and/or studying together.

In Germany - where I sought asylum because war conditio. endangered my life - I was very glad to spend most times researching in physics and related sciences especially medical physics. The german judge admired that I kep communicating with my professors during Detention time. But the consequences of the lebanese civil war reached

2/4

me. An apparently member of a lebanese militia pressed to use me for his anonymous mail. He also Threatened my family in Lebanon so that my first wife felt very scarea and left me. I addressed my fears to The immigration officer a foreign students case manager at the The university.

After The judgement, which was to be imprisoned for Two years, and my appeal it came to understanding with state attorney so That I'll be released provided I withdraw my appeal and flew back to my country. I did, because I just wanted to get out from prison but didn't rea its future consequences.

I tried to continue my study in Lebanon but failed under then over whelmed war conditions. I married again and have now four kids, The last Two are twins. My wife does work and I am The major means of income. she isn't able

to feed and to take care (two of them go to school) of the four children alone.

I made my job career in a local computer company as a sale manager, then established my own small business, where two computer engineers and four technicians assemble ordered syste and do training for clients.

I thought of enlarging my business, i.e. importing by myself from international free markets. I visited brazilian Embassy in Leba to grant a visa ony my original passport but was told that I have to wait for more than one month and it is not gua~~ranteed~~ guaranteed. Then I got the idea to misuse this american passpor, with which I will be permitted to enter Paraguay and then fly to the border city with Brazil (cidaded Esta) where the free market is. I am not offering an execuse but that's how I

committed this mistake. I thank God that I didn't hurt anybody (physically) while committing this offense, and my intention was to travel there to contact computer hardware companies and then go back.

I realize that this offense has hurt me a lot: in my family and my business. I feel very sorry that I brought myself to this bad situation. I hope I'll be able with your just consideration to go straight again. A continuous detention will only confuse me (depressing my psychologic state), harden my family situation and defame my reputation, which I believe and you Honor know is priceless.

I know better that I shouldn't do what I did. when back to my country I will continue managing my business before it's too late.

Sincerely
Bassam G. Makki.

11/16/99  11:51  ☎717 547 6299          ALP ISM                                    ☑001
Case 1:99-cr-00870-JLK   Document 5   Entered on FLSD Docket 12/01/1999   Page 50 of 101
AO 245 S (Rev. 12/96 DC) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## for the District of Columbia

UNITED STATES OF AMERICA

v.                                              Case Number   CR 98-334       **FILED**

BASSAM GHARIB MAKKI aka Hassan Mohamad Makki                                  APR 2 5 1999

Defendant.                                                              Clerk, U.S. District Court
                                                                       District of Columbia

### JUDGMENT IN A CRIMINAL CASE
#### (For Offenses Committed On or After November 1, 1987)

The defendant, BASSAM GHARIB MAKKI aka Hassan Mohamad Makki, was represented by Teresa Alva, Esquire.

On motion of the United States the court has dismissed Original indictment.

The defendant pled guilty to counts 1s, 2s and 3s of the superseding Indictment on 12/16/98. Accordingly, the defendant is adjudged guilty of such counts, involving the following offenses:

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 18 USC 1544 | Misuse of a passport | September 15, 1998 | 1s |
| 18 USC 1544 | Misuse of a passport | September 16, 1998 | 2s |
| 18 USC 1546(a) | Possession of false documents prescribed by statute and regulation for entry into and evidence of authorized stay and employment in the United States | September 18, 1998 | 3s |

As pronounced on April 22, 1999, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The mandatory special assessment is included in the portion of this Judgment that imposes the Criminal Monetary Penalties.

It is further ordered that the defendant shall notify the United States Attorney and the Clerk's Office for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this the 22 ⁿᵈ day of April , 1999.

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**  # of pages ► 26

To Sandy      From S. Snyder
Dept./Agency              Phone # 547-6963
Fax # 570-323-5862       Fax #
NSN 7540-01-317-7368    5099-101   GENERAL SERVICES ADMINISTRATION

                                        Paul L. Friedman
                                    United States District Judge

Defendant's SSN: None
Defendant's Date of Birth: 6/6/68
Defendant's USM No.: 58753-004
Defendant's address: Unknown

                                    United States District Court
                                    for the District of Columbia
                                    A TRUE COPY
                                    NANCY MAYER-WHITTINGTON, Clerk
                                    By _____ Deputy Clerk

GOVERNMENT
EXHIBIT
4

Judgment—Page 3 of 6

Defendant: BASSAM GHARIB MAKKI aka Hassan Mohamad Makki
Case Number: CR 98-334

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  THREE (3) years (if not deported).

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

The defendant shall not possess a firearm as defined in 18 U.S.C. § 921.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by the probation office of this court set forth on the next page.  The defendant shall also comply with the following special conditions:

The Court finds the defendant does not have the ability to pay a fine, or costs, of incarceration or supervision.

The defendant shall cooperate fully with the Immigration and Naturalization Service.

Judgment—Page 4 of 6

Defendant: BASSAM GHARIB MAKKI aka Hassan Mohamad Makki
Case Number: CR 98-334

### STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer.

2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

4) The defendant shall support his or her dependents and meet other family responsibilities.

5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

6) The defendant shall notify the probation officer ten days prior to any change in residence or employment.

7) The defendant shall refrain from excessive use of alcohol.

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

11) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

12) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 98-cr-60879-JLK Document 5 Entered on FLSD Docket 12/01/1999   Page 53 of 101

Defendant: BASSAM GHARIB MAKKI aka Hassan Mohamad Makki
Case Number: CR 98-334

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth below under SCHEDULE OF PAYMENTS heading.

| Count | Assessment | Fine | Restitution |
|-------|-----------|------|-------------|
| 1s | $100.00 | $0.00 | $0.00 |
| 2s | $100.00 | $0.00 | $0.00 |
| 3s | $100.00 | $0.00 | $0.00 |
| TOTALS: | $300.00 | $0.00 | |

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution;  (5) interest; (6) penalties.

Payment of the total fine and/or other criminal monetary penalties shall be due in full during period of incarceration or supervision.

Unless the court has expressly ordered otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States Attorney.

AO 245 S (Rev. 12/96 DC) Sheet 7 - Statement of Reasons

Judgment—Page 6 of 8

Defendant: BASSAM GHARIB MAKKI aka Hassan Mohamad Makki
Case Number: CR 98-334

## STATEMENT OF REASONS

☐   The court adopts the factual findings and guideline application in the presentence report.

OR

X☐   The court adopts the factual findings and guideline application in the presentence report except
(see attachment, if necessary): **See Court's Opinion of 4/20/99 (Attached)**

## Guideline Range Determined by the Court:

Total Offense Level:    10

Criminal History Category:    **III**

Imprisonment Range:    10    to    16    months

Supervised Release Range: _____ to _____ years

Fine Range: $_____ to $_____

     ☐   Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Total Amount of Restitution: $_____

     ☐   Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

     ☐   For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

     ☐   Partial restitution is ordered for the following reasons(s):

☐   The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

☐   The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

OR

The sentence departs from the guideline range:

☐   upon motion of the government, as a result of defendant's substantial assistance.

X☐   for the following specific reason(s):    **Under Section 4A1.3 for the reasons stated in the Court's Opinion of 4/20/99 (Attached)**

```
REG NO..: 58753-004 NAME....: MAKKI, BASSAM GHARIB
CATEGORY: ARS          FUNCTION: DIS          FORMAT:

FCL    ASSIGNMENT DESCRIPTION            START DATE/TIME STOP  DATE/TIME
ALP    GCT REL    GOOD CONDUCT TIME REL (CCCA)  11-17-1999 1222 CURRENT
ALP    A-DES      DESIGNATED, AT ASSIGNED FACIL 06-15-1999 1813 11-17-1999 1222
O-Q    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-15-1999 1813 06-15-1999 1813
O-Q    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-04-1999 0902 06-15-1999 1813
CBR    ADMIN REL  ADMINISTRATIVE RELEASE        06-04-1999 0902 06-04-1999 0902
CBR    A-ADMIN    ADMINISTRATIVE ADMISSION      06-04-1999 0847 06-04-1999 0902
ATL    PRE REMOVE PRE SENT DETAINEE REMOVED     11-02-1998 1051 06-04-1999 0847
ATL    A-PRE      PRE-SENT ADMIT, ADULT         10-27-1998 1911 11-02-1998 1051
MIM    PRE REMOVE PRE SENT DETAINEE REMOVED     10-27-1998 1214 10-27-1998 1911
MIM    A-PRE      PRE-SENT ADMIT, ADULT         09-20-1998 1036 10-27-1998 1214


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



CONSULATE GERAL DO BRASIL

VISA APPLICATION

PLEASE TYPE OR PRINT YOUR ANSWERS IN THE SPACE PROVIDED BELOW EACH ITEM

1. SURNAMES OR FAMILY NAMES (Exactly as in Passport)
   MAKKI

2. FIRST NAME AND MIDDLE NAME (Exactly as in Passport)
   MOHAMAD GHARIB

3. OTHER NAMES (Maiden, Religious, Professional, Aliases)

4. DATE OF BIRTH (Day, Month, Year)
   Jan 2, 1951

5. PLACE OF BIRTH
   City Province
   LEBANON

6. NATIONALITY
   U.S American

7. PASSPORT NUMBER
   27189057

DATE PASSPORT ISSUED
(Day, Month, Year)
May 18, 95

DATE PASSPORT EXPIRES
(Day, Month, Year)

Country

SEX   [X] MALE   [ ] FEMALE

8. HOME ADDRESS (include apartment no., street, city, province, and postal zone)
   Hart Yard 257 ...

9. NAME AND STREET ADDRESS OF PRESENT EMPLOYER OR SCHOOL (Postal box number unacceptable)
   Beirut  code d Rouce  fam 67

10. HOME TELEPHONE NO.

11. BUSINESS TELEPHONE NO.

12. COMPLEXION

13. COLOR OF HAIR
    dark brown

14. COLOR OF EYES
    brown

15. MARKS OF IDENTIFICATION

16. HEIGHT
    177 cm

17. MARITAL STATUS
    [ ] Married  [X] Single  [ ] Widowed  [ ] Divorced  [ ] Separated

18. NAMES AND RELATIONSHIPS OF PERSONS TRAVELING WITH YOU

GOVERNMENT
EXHIBIT
7

21. HAS YOUR BRAZIL VISA EVER BEEN CANCELED?
[X] No
[ ] Yes         Where?
         When?                                    By Whom?

22. Bearers of visitors visas may generally not work or study in
Brazil
DO YOU INTEND TO WORK IN BRAZIL?          [X] No    [ ] Yes
If YES, explain

23. DO YOU INTEND TO STUDY IN BRAZIL?          [X] No    [ ] Yes
If YES write name and address of school

24. PRESENT OCCUPATION (If retired, state past occupation)     Businessman

25. WHO WILL FURNISH FINANCIAL SUPPORT, INCLUDING TICKETS?     Self , have Return Tickets

26. AT WHAT ADDRESS WILL YOU STAY IN BRAZIL?     Plaza , Hotel

27. WHAT IS THE PURPOSE OF YOUR TRIP?     Business

28. WHEN DO YOU INTEND TO ARRIVE IN BRAZIL?     next days

29. HOW LONG DO YOU PLAN TO STAY IN BRAZIL?     about one week

30. HAVE YOU EVER BEEN IN BRAZIL?
[X] No
[ ] Yes         When?
For how long?

31. (a) HAVE YOU OR ANYONE ACTING FOR YOU EVER INDICATED TO A
BRAZILIAN CONSULAR OR IMMIGRATION EMPLOYEE A DESIRE TO IMMI-
GRATE TO BRAZIL?  (b) HAS ANYONE EVER FILED AN IMMIGRANT VISA
PETITION ON YOUR BEHALF?  (c) HAS LABOR CERTIFICATION FOR EM-
PLOYMENT IN BRAZIL EVER BEEN REQUESTED BY YOU OR ON YOUR
BEHALF?
(a) [X]No  [ ]Yes    (b) [X]No  [ ]Yes    (c) [X]No  [ ]Yes

32. ARE ANY OF THE FOLLOWING IN BRAZIL? (If YES, circle appropriate relationship and
indicate that person's status in Brazil, i.e., studying, working, Brazil permanent resident, Brazilian
citizen, etc)
HUSBAND WIFE              FIANCE, FIANCEE              BROTHER/
FATHER MOTHER              SON/DAUGHTER              SISTER

33. PLEASE LIST THE COUNTRIES WHERE YOU HAVE LIVED FOR MORE THAN 6
MONTHS DURING THE PAST 5 YEARS, BEGIN WITH YOUR PRESENT RESI-
DENCE
| COUNTRIES: | CITIES: | APPROXIMATE DATES: |
| --- | --- | --- |
| USA | Miami | '91 |
| Russia | Moscow | 1980 - 1991 1998 |

COMPLETE ALL QUESTIONS ON NEXT PAGE

A visa may not be issued to a person who [...] categories defined by law as inadmissible to Brazil (except when a waiver is obtained in advance)

Have you ever been afflicted with a communicable disease of public health significance,   [ ] Yes [x] No
a dangerous physical or mental disorder, or been a drug abuser or addict?

Have you ever been arrested or convicted for any offense or crime, even though subject
of a pardon, amnesty, or other such legal action?                                         [ ] Yes [x] No

Have you ever been a controlled substance (drug) trafficker, or prostitute or procurer?  [ ] Yes [x] No

Have you ever sought to obtain or assist others to obtain a visa, entry into Brazil,
or any immigration benefit by fraud or willful misrepresentation?                        [ ] Yes [x] No

Were you deported from Brazil, within the last 6 years?                                   [ ] Yes [x] No

Do you seek to enter Brazil to engage in export control violations, subversive or
terrorist activities, or any unlawful purpose?                                            [ ] Yes [x] No

Have you ever ordered, incited, assisted, or otherwise participated in the persecution
of any person because of race, religion, national origin, or political opinion under
the control, direct or indirect, of the Nazi Government of Germany, or of the govern-
ment of any area occupied by, or allied with, the Government of Germany, or have you
ever participated in genocide?                                                            [ ] Yes [x] No

A YES answer does not necessarily imply ineligibility for a visa, but if you answered "YES" to any of
the above, or if you have any question in this regard, personal appearance at this office is recommended.
If appearance is not possible at this time, attach a statement or facts in your case to this application.

5. I certify that I have read and understood all the questions set forth in this application and the answers I
have furnished on this form are true and correct to the best of my knowledge and belief. I understand that
false or misleading statements may result in the permanent refusal of a visa or denial of entry into Brazil.
I understand that I may be required to present this form and entitle me to enter into Brazil upon arrival at port of
entry if the visa is found unacceptable.

DATE OF APPLICATION

APPLICANT'S SIGNATURE

If this application has been prepared by a travel agency or another person on your behalf, the agent should
indicate name and address of agency or person with appropriate signature of individual preparing form.

SIGNATURE OF PERSON PREPARING FORM
(If other than applicant)

DOT NOT FILL                                    DO NOT FILL

| A. TIPO DE VISTO | B. CONSULTA A SERE OF/CT/TEL/FAX | C. AUTORIZAÇAO DA SERE DESP/DESPTEL/FAX | D.NO. OU NOS. DO(S) VISTO(S) |
|---|---|---|---|
| TURISTA | / | | |
| E. [ ] CONCESSAO [ ] DENEGAÇAO [ ] RENOVAÇAO | F. ENTRADAS [ ] UMA [ ] MULTIPLAS | G. PRAZO DE ESTADA . ..... DIAS | H.DATA / / |
| I. ORGAO REQUISITANTE/EXPEDIENTE | | J. QUALIFICAÇAO | |
| K. OBSERVAÇOES | | L. RUBRICAS FUNC CHEFIA | |

(ESPAÇO RESERVADO PARA RECIBO - ITEM 810 DA TABELA, OU SISTEMA DE PROTOCOLO NUMERADO DE ENTREGA E RECOLHIMENTO DE VISTOS.)

```
                                             LS# 1219990443
                                             TC/
                                             German
```

Bavarian Ministry of Justice

<u>Gz 9352 b E -U - 2580/98</u>          Munich, December 4, 1998
(Please cite in reply)              Telephone 089/2597 2264


Bavarian Ministry of Justice 80097 Munich

Embassy of the                                      <u>By fax</u>
United States
of America
Attn: Mr. Masley
Deichmanns Aue 29

53179 Bonn



Judicial Assistance in Criminal Cases
here:      Request of the American Embassy in Bonn for
           Transmission of a Judgment in a Criminal Case Against
           Bassam Garib Makki

With 1 enclosure


Dear Mr. Masley:

I have the honor to transmit to you at first by fax a photocopy
of the Judgment of the 1st Criminal Chamber of the Munich
Landgericht I dated December 22, 1989 (Gz. 1 KLs 112 Js 3948/89)
in response to letters rogatory. A sentencing calculation will
be sent later.

Accept the assurances of my highest esteem
Per procuration

[signature]
Fischer
Division Chief


GOVERNMENT
EXHIBIT
8

IN THE NAME OF THE PEOPLE!

In the criminal proceedings against

Makki, Bassam Gharib,          born on July 25, 1967 in Bint-
                               J'beil/Lebanon
                               married student,
                               Lebanese citizen,
                               last residing at:
                               Elisabethenstrasse 64, 6100 Darmstadt,
                               at present in the Munich-Stadelheim
                               prison

                               Parents:  Gharib and Fatima Makki, the
                                         latter née Makki

for attempting to participate
in a felony involving explosives

in the public session of December 22, 1989 on the basis of the
trial on the same day in which the following persons
participated:

1.  the presiding judge        Presiding Judge
                               at the Landgericht
                               Dr. Hollenrieder,

2.  the associate judges:      Judge at the Landgericht
                               Kleiner
                               Judge at the Landgericht
                               Hopfensperger,

3.  the lay judges             a)  Sebastian Mann,
                               b)  Bodo Fitz,

4.  the prosecuting attorney   Public Prosecutor
                               Schubert,

5.  the defense attorneys:     Attorney Eysell,
                               Attorney Wächter,

6.  the clerk of the court:    Legal Secretary
                               Beutlhauser

the 1st Criminal Chamber of the Munich Landgericht I issues the
following

<u>Judgment:</u>

I.   The defendant Bassam Gharib Makki is sentenced to
     imprisonment for

2 years

for attempted participation in bringing about an explosion.

II.  The defendant shall bear the court costs and his necessary
     expenditures.

- 3 -

Statutes applied:
      §§ 30/II, 311 StGB [Criminal Code].

Grounds:

I.

The defendant was born on July 25, 1967 in Bint-J'beil in South
Lebanon and grew up with his 6 siblings (5 brothers, 1 sister) in
Beirut.  His father was employed with the city administration.
The family lived in East Beirut up to 1976, then fled to South
Lebanon because of the civil war's chaos, and then returned to
West Beirut.  Today two of the defendant's brothers live in the
United States, one brother perished in the civil war, and the
rest of the family lives in South Lebanon again.

The defendant — like his family — professes the Islamic religion,
to be more precise, the Shiite branch.

He attended high school in Lebanon up to graduation.  At the wish
of his family he was supposed to go abroad subsequently for
[university] study, not least in order to be safe from the
effects of the civil war.  On December 2, 1965 [sic] the
defendant traveled via Berlin to the Federal Republic of Germany
as an applicant for asylum.  After he learned that as someone
given asylum he would not be able to undertake studies in the
Federal Republic of Germany for the foreseeable future, he went
back to Lebanon — with financial support from a church
organization — and applied successfully from there for

- 4 -

admission as a student in Germany.  After withdrawing his request
for asylum he received a residence permit in April 1988 for study
purposes and studied physics up to his provisional arrest on June
22, 1989 at the Technische Hochschule [Institute of Technology]
in Darmstadt.  He speaks fluent German.  Already during his stay
as an applicant for asylum he attended German courses in the
Landkreis [rural district] Friesland and sought to have his high
school diploma recognized.

The defendant is married.  His wife lives in Beirut.  According
to his testimony the marriage was registered in Lebanon in
February 1987, after he had already been married in a religious
ceremony.  He lives from a stipend amounting to DM 1,000.00 and
support from his brother in the United States.

The defendant is healthy physically and mentally.  He has no
prior criminal record in this country, and according to his
testimony, not abroad either.

These statements regarding the personal circumstances of the
defendant are based on the latter's testimony, which appears to
be credible in this regard, in the trial, and on information
dated December 2, 1989 that was obtained from the
Bundeszentralregister [Federal Central Registration Office].

II.

The trial produced the following facts of the case:

The defendant is an opponent of the State of Israel and of the
United States of America, which supports this State.  For an

- 5 -

undetermined time he has had connections with similarly minded
persons or organizations in Beirut, Lebanon, who engage in or
have an interest in preparing and executing bomb attacks against
Israeli, Jewish, or American installations in the Federal
Republic of Germany or in having such attacks prepared and
executed.

The defendant reconnoitered suitable targets as ordered and on
his own initiative and offered to undertake the execution of such
attacks or at least to collaborate as an accomplice.

For this purpose he was in Munich on September 19, 1988 in any
event and photographed here three buildings designated in more
detail later that were considered for an attack.

On September 23, 1988 he sent a package to a Hadi Kassab/Dagher,
Beirut, Lebanon, P. O. Box 11/7556 via the company DHL Worldwide
Express GmbH, Fasanenweg 5a, 6092 Keisterbach.  The DHL company
is a private mail shipping company that provides mailing services
even to crisis areas, in particular Lebanon.  The package
contained a city atlas of the Rhine-Main area, a letter written
in Arabic by the defendant, and 13 numbered color photographs.

The photographs show:

1.   The building of the Israeli religious community in Munich at
     Reichenbachstrasse 27 in Munich (photos Nos. 1-7),

2.   The property Maximilianplatz 15 in Munich in which the

- 6 -

office of the Israeli airline El-Al is located (photos 8 -
10), as well as

3.   the building of the Israeli Trade Representation at
Widenmayerstrasse 11 in Munich (photos 11-13).

In the letter that accompanied the package brought to be sent the
defendant refers to previous contacts with the addressee and
talks about various BMW cars that he says he has located.  In the
process the photographs are allocated to each of the types of
cars.  One BMW concerning which he states that it combines the
models 320 and 520 is given particular attention.  In addition,
the letter contains telephone and fax numbers at which the
defendant can be reached.  Subsequently he mentions a BMW 520
that he did not buy because of papers that were missing.  The
letter is signed "Jozef" and has the following text in German
according to the certified translation of the interpreter, Monsa
El-Sohsal:

     "To the good friend Dagher,
Cordial greetings
I hope that things are going well for you and that you are in the
best of health.  Further I hope that you have regained your
vitality after this summer vacation.  I also hope that the study
situation[*1] is more favorable than previously.  Please let me
know how all the friends are and what they are doing in their
studies[*1].

If you ask about us[*2], we are fine.  What we really miss is being

- 7 -

together with you all and the relatives in our homeland.  Life abroad is difficult.  Please tell my mother that I am homesick for her.  When I was quite alone twice, I thought very strongly about her.

With reference to your urgent wish I have attempted to find the right one for you, as one says here, a "good catch."  It is supposed to be a surprise for you, but I sent you a picture of it anyway (3).  It is a BMW.  It is in good condition and looks "loaded."[*3]  When you see it, you will realize that the two models 320 and 520 are combined in it.  This is the most favorable one that I have found in the region.  Other cars that I found, also BMW's, were average, like the 730 and 750; see (9) and (11).  Naturally a good car also has its price.

Please stay in contact with me.  The telephone connection from here is very difficult or nearly impossible.  It also seems that your telex is not operable.  In any event, I shall attempt via these various ways to send you what you need.  Please write down my telex number in your notebook: Germany 351685256545.  With reference to the 520 I forgot to tell you that I did not buy it. It does not have any papers.

I sent a letter with my address to the family.  I hope that it reached them.

Give my regards to all my relatives and friends.
Until the next letter
Your always faithful

    Jozef
(signature: J/Jozef)[*4]

                                    - 8 -


P.S.  Be careful about making internal contact with me[5]

                         5893087
                         1525 - 77
                         1535
------------------------------------------------------------------

Interpreter's Notes:

*1    May also mean attending schools/does not have to be
      university studies.

*2    May also be "me" in the polite form.

*3    May also mean that the car is outfitted with a lot of
      extras.

*4    The signature consists of the first letter of the name Jozef
      in Arabic: J, combined with the name in Latin script.

*5    It may also mean: When telephoning inside the country here.

------------------------------------------------------------------


It was possible to decipher most of the contents of the letter
dated September 23, 1988 by means of a code found in the
defendant's apartment.

In it [the letter] the defendant indicated that he had found
three suitable Israeli targets for attacks.  From the enclosed 13
photographs it appears that what are involved are the building of

- 9 -

the Israeli religious community, the office of the airline El-Al, and the office of the Israeli Trade Representation, each of them in Munich.   The Israeli religious community at Reichenbachstrasse 27 is indicated to be the most favorable target for an attack, because [both] injuries to persons and property damage could be achieved.   With regard to the telex number given in the letter, which was also encoded, what is involved is the line to the SHR-Reisebüro [SHR travel bureau] in Darmstadt.

At the beginning of October 1988 the defendant inquired in Beirut via the telex connection of the SHR-Reisebüro in Darmstadt whether a package had arrived there.   He received the reply by telex via the SHR-Reisebüro that this was not yet the case. Thereupon he inquired at the DHL company in Kelsterbach on October 6, 1988 why his shipment had not yet been delivered.   It was explained to him that a message would be put in the indicated post office box.   The package could then be picked up at the branch office SNAS of the DHL company in West Beirut.   The defendant passed this information on to Beirut again by telex via the travel bureau.   Subsequently a "Kahlend RAI" picked up the package on October 11, 1988.

On May 31, 1989 the defendant again sent a telex via the SHR-Reisebüro in Darmstadt to a "Mr. Tarek" in Beirut in English in which he first stated that previous letters and telex messages probably did not go through.   He stated further that he wanted to purchase up to 20 Mercedes cars of the type 230.4.   He indicated, however, that it was difficult to buy the larger models 450 and 480.   He said that he would try to obtain these types during his next vacation.   If there were some marks or checks "59," he

- 10 -

indicated that he would  be willing to buy the cars.  In August
1989 he would be flying to Lebanon.

The deciphering of this telex revealed that "Mercedes" meant
installations of the United States of America, 20 of which he had
reconnoitered.  Here more personnel damage could be caused
without hitting Germans.  The Mercedes cars 450 and 480 meant
that it was difficult to scout out special buildings or
personages.  The defendant stated that he was ready to carry out
an attack if he had dynamite and weapons at his disposal.  The
defendant signed this telex with "Maher (11/3)."

Despite several attempts to send the telex, it was not received
in Beirut.  The reason for this lay in the fact that the telex
number 23693 given by the defendant lacked the area code for
Beirut, Lebanon, and the SHR-Reisebüro did not ascertain the area
code — which was easily possible — even though lists were
generally available.  In fact the telex line turned out to be
that of the addressee of the letter of September 23, 1988
(Dagher/Mansab, travel bureau in Beirut, Lebanon).

During the preliminary arrest of the defendant on June 22, 1989,
a letter in Arabic script to "Dagher" dated May 17, 1989 was
seized with regard to which it is not known whether it had been
sent.  In this letter too the defendant reports in coded form
concerning American targets like buildings, military
installations, bars, and restaurants.  He refers again to
information already transmitted concerning Israeli installations.

- 11 -

It was not possible to ascertain what the American targets were
that were mentioned both in the telex of May 31, 1989 and in the
letter of May 17, 1989.

The defendant acted with knowledge of all factual circumstances
and thus intentionally.

III.

This statement of the facts is confirmed to the conviction of the
court on the basis of the allegations of the defendant, to the
extent they can be trusted, the testimony of the witnesses
Claudia Hartmann, Johanna Ehlers, Fritz Schwebel, and KHK
[Kriminalhauptkommissar = Chief Inspector] Reuther, as well as
the letter of defendant dated September 23, 1988 that was read
out (pages 750/751 of the file).

Viewed objectively, the defendant has essentially admitted the
activities charged to him, but claims to have acted under duress.
He indicates that while he has no sympathy for the Israeli
occupation force, he is neither a terrorist nor does he support
such activities.  He says that he only wants to study in peace.

In detail he gave the following defense:

It is not true that he had maintained any contacts with persons
or organizations in Lebanon that are hostile to Israel.  One day
at the end of September and beginning of October 1988 he was
visited by a certain "Jozef" in his apartment in Darmstadt.
Jozef was said to have been an Arab and completely unknown to

- 12 -

him up to that point.  This person talked about himself in the
plural ("we"), but neither at this meeting nor at a second later
meeting did he reveal who else was standing behind him.  Jozef
seemed to be informed where his [the defendant's] family lived
and indicated that it would mean death for his wife, his
relatives, and him himself if he did not do what he said.  Jozef
was said to have had a package with him, the contents of which he
did not see.  In particular he did not know that photographs were
in it.

Faced with this threat he said that he had written the letter of
September 23, 1988 at Jozef's demand and enclosed it in the
package.  Further he said he received instructions to hand the
package over to the company DHL, and a draft was already dictated
to him for a telex with which he later would have to inquire
whether the package had arrived.

In addition, "Jozef" was said to have left certain documents with
him for safekeeping "so that they did not fall into the hands of
his enemies."  These documents — various written items — he said
he had hidden in his apartment, among other places behind picture
frames, in accordance with the instructions without being aware
of their contents.  Finally he said that "Jozef" had borrowed
from him an old Canon 35 mm camera.  He said that in any case he
himself had not taken any of the pictures of the three buildings
in Munich designated in the charges.  He indicated that he had
been in Munich previously, but not in the period that is relevant
here.  What is correct is that he — as demanded by Jozef — sent
the inquiries to Beirut by telex concerning the arrival of the
package via the SHR-Reisebüro.  In this connection he had also
spoken on the telephone and in person several times both with the
company DHL and with the SHR-Reisebüro.  He said that Jozef

- 13 -

had visited him for a second time in November 1988, in fact in
his new apartment, although he had not informed him about the
move.  On this occasion the latter had brought back his camera.
The telex of May 31, 1989 and the letter of May 17, 1989 he
indicated that he had written subsequently as dictated by Jozef.
He said he had not sent the last named item.

In response to questions on the subject the defendant refused to
describe "Jozef" in greater detail or to give other information
about him, since he feared for his life and that of his
relatives.

With regard to the activities demanded by "Jozef" he had assumed
that they involved "illegal goings-on."  In the letter it was
about cars.  He said that he had not known that in reality it was
dealing in encrypted form with the preparation of bomb attacks,
to say nothing of wanting to declare himself ready for such
things.

He said he did not know the code.  He himself was not mentioned
in the letters.  The addressees of the messages (Kassab, Dagher,
Tarek) meant nothing to him.

Based on the evidence from the trial, namely the evaluation of
the activities admitted by the defendant on the one hand and his
defense on the other hand, the Criminal Chamber is convinced that
there was no "Jozef" and that the claim of the defendant that he
had acted simply as a largely ignorant tool under the pressure of
this unknown person is simply a self-serving declaration.  It is
makes no logical sense at all that someone who was making another

- 14 -

person consent to participate in attacks with death threats would
— if one believes the allegations of the defendant — keep the
victim largely in ignorance about the actual goals (bomb attacks)
and then leave the code behind with this "tool."

In this case the principal would leave behind an important
connecting link for possible indication of his guilt and
provision of evidence and thereby subject himself to incalculable
dangers.

Various behavior patterns of the defendant would also be
incomprehensible if one were to assume that he was acting on
behalf of a third party.  For one thing, the allegation by the
defendant that he had been ready to act only under death threats
is in striking contradiction with his statement that he had
assumed some kind of illegal things, in any event auto
transactions, and with his extremely assiduous efforts
subsequently to obtain certainty concerning the actual arrival of
the package in Beirut (witnesses Hartmann and Schreck)  The way
in which the code was stored also speaks clearly against the
defendant's role as a tool.  One code was hidden together with
explosive instructions behind a picture frame, and another was in
a suitcase.  The allegation by the defendant that "Jozef" had
given him a slip of paper at the door as he left and that he had
put it away and later forgotten it seems extremely unbelievable.
This very circumstance is an unambiguous indication against his
claim that he had not recognized the code.  Also the retention of
some of the drafts of his letters (e. g. the telex of May 31,

...                        - 15 -                         .

1989) testifies to authorship by the defendant and against having
it dictated by a third party.  Similar significance as evidence
is attributed to the circumstance that the names and telephone
numbers of Tarek and Dagher, the persons to whom the letters were
addressed, were found in a notebook of the defendant that
consisted of an extensive list of addresses (witness Reuther).
The claim of the defendant that he had made this notation too on
instructions from "Jozef" is not credible.  The notation in
personal documents in contrast to those allegedly stored
indicates unambiguously that he knew very well who the addressees
were.

When all is said and done the Criminal Chamber has not the least
doubt that the defendant acted independently and that "Jozef" and
Maher (11/3) are aliases that he used.

With regard to the defendant's motivation the Criminal Chamber
has assumed in favor of the defendant that he was not driven by
any financial reasons but by national and religious feelings and
convictions, possibly reinforced by the death of his brother,
which he blamed on the State of Israel, according to his defense.

After having assumed that the defendant knew the code and is the
author and sender of the letters, the Criminal Chamber must
interpret its content to mean that he is declaring himself ready
to carry out bomb attacks against three specific targets in
Munich (or alternatively one of them) himself, but at least to
collaborate in this as an accomplice.

- 16 -

The thing is that on the basis of the defendant's motive and his knowledge of the area there is no doubt that he intended to act as a sole perpetrator or an accomplice and not as an accessory for the planned bomb attacks and was also regarded by his contact persons as at least an accomplice.  The defendant wanted the deed for which he indicated his readiness and that he offered to be his own, regardless of which of the possible motives listed above was finally decisive for him.  He knew the exact lay of the land at the site of the crime, in particular the location of the targets of the attacks, while the persons to whom his offer was addressed only had photos of the targets and thus would have had to be led to the site of the crime by him at least, in the event that it had not been planned at any rate for the defendant to carry out the attacks alone, which by itself would have led to the guilt of the defendant, and thus to complicity.

The findings with regard to the content of the package with a letter dated October 23, 1988, the places where the letter drafts, explosive instructions, and codes were found in the defendant's apartment, and his clothing are based on the testimony of the witness KHK Reuther in agreement with the statements of the defendant.  The latter witness explained the meaning of the defendant's letters using in particular the code that was seized, according to which BMW cars mean Israeli or Jewish targets for attacks and the word "buy" in this context means "to carry out an attack."

It is true that this expression was not expressly contained in the defendant's letter of October 23, 1988.  The willingness to carry out attacks himself, however, is revealed clearly by the

- 17 -

defendant's coded telex of May 31, 1989, (witness Reuther).  Even
if it cannot be proved that this telex was received in Beirut, it
may be used to interpret the letter of October 23, 1988.  In the
final analysis it would be hard to explain what kind of sense the
letter of October 23, 1988 would make if the addressees had not
been able to turn to the defendant if they had wanted to take a
closer look at one of the three targets for attacks in Munich
proposed by the defendant.

It is true that the defendant did not have a concept worked out
for a specific target to attack after the state of readiness had
been achieved.  Three sites in Munich, however, were put forward
as concrete proposals for which the kind of crime (bomb attack)
was recognizable.  The statements of the defendant that expressed
his willingness were serious.  The circumstance that he gave an
incomplete telex number (with the area code omitted) when
submitting the telex of May 31, 1989 does not lead to the
assumption that he did not want the message to be sent.  Since
there are general reference works in this regard, it may rather
be assumed that the defendant believed that the message would be
sent.

His repeated inquiries in this regard at the SHR-Reisebüro
(witness Hartmann) confirm his interest in the transmittal.

The fact that the defendant, when he sent letters to Beirut with
the content that has been ascertained using a code, was building
on contacts that had already been established or on contact
possibilities known to him to persons or organizations that were
engaged in carrying out terror attacks seems obvious from the

- 18 -

facts of the case.

In the trial the counsel for the defense moved that the Director of the Bavarian Landeskriminalamt [State Criminal Office], Maillingerstrasse 15, 8000 Munich 19, be called as a witness in support of the notion that the court would be willing to levy a fine without probation.  The witness would testify that the BLKA [Bavarian State Criminal Office] had come into possession of the defendant's notebook or copies thereof before June 22, 1989 by ignoring the basic right of the defendant to the inviolability of his residence (Art. 13 GG [Constitution]) and obtained the notebook or copies thereof from his apartment secretly and without his knowledge and further that only on the basis of information obtained in this manner were proceedings instituted against the defendant.

The motion of the defense attorney could be rejected on the grounds for the judgment, because the alleged fact is without significance for the decision on legal grounds (§ 244/III, II StPO [Criminal Procedure Ordinance].  According to BGHSt [Decisions of the Federal Supreme Court in Criminal Cases] 33, 283, 356; 32, 345 these do not constitute <u>any obstacle to the proceedings.</u>

With regard to the defendant's notebook that was seized by the investigating authorities, however, there is <u>no prohibition on using it</u> even if these authorities are alleged to have obtained it in an "illegal manner."  Such a prohibition on evidence and evaluation is only justified to the extent that the content of the notebook involves statements that could be considered an emanation of the personality of the author on the basis of their content.

This is the case for diaries of a highly personal nature, but not

- 19 -

when — as  here — the culprit makes address lists with notes
concerning his crimes (BGHSt 19, 325, 331).  In addition, a
prohibition on use can only be recognized in the framework of a
balanced relation between the personal interest in the protection
of one's own private life guaranteed by the Constitution and the
interest of the State in criminal prosecution.  The basic
principle of proportionality is firmly established in the
evaluation of prosecutorial procedures in the precedents of the
Bundesverfassungsgericht [Federal Constitutional Court] (see
citations in BGHSt 19, 325, 332).

In the specific case the interest of the defendant in the
protection of his own private life has to yield priority in view
of the seriousness of the planned crime (bomb attacks with the
possible endangerment of many people and substantial property
values).


IV.


Legal Assessment:

The defendant made himself guilty through his behavior in
attempting to participate in a felony of causing an explosion in
accordance with §§ 30, Para 2, 311, Paras 1 and 2 StGB [Criminal
Code].

He declared to others his readiness to bring about an explosion
using explosive materials and thereby to endanger the life and
limb of another person or property of substantial value belonging
to others.  Through the fact that the defendant proposed three
targets for attacks in Munich and in the process emphasized the

- 20 -

Israeli religious community as the most favorable target he
specified adequately the planned deed in his concept.   In this
regard the manner of execution did not have to be established in
every detail, and it was enough that the culprit considered the
sites named alternatively for an attack (cf. Dreher-Tröndle,
marginal note No. 7 to § 30 StGB).

With regard to the question whether the receipt of the
declaration to the addressees is necessary with regard to the
alternative elements of an offense of declaring oneself willing
in 30 StGB, the Chamber follows the prevailing opinion that
rejects this (cf. e. g. Schönke-Schröder, StGB, 23rd Edition,
marginal note 23 to § 30; BGHGA [probably Goldtammer's Archiv für
Strafrecht = Goldtammer's Archive for Criminal Law] 63, 126).
The clarification of this legal issue could be dropped, however,
since in any case the package with the photographs of the targets
for attacks along with the letter signed "Jozef" of the defendant
— when the letter and package are considered together they reveal
unambiguously the offer to participate in blowing up one of the
targets for attacks that were photographed — were received by the
addressee.  The fact is that "Kahlend RAI" picked up the package
on October 11, 1988.

V.

Sentencing:

Since § 30 StGB with regard to the threat of punishment refers to
the sentencing range for the offense under consideration, before
the actual sentencing it was necessary first to examine whether a
less serious case was involved with the consequence of a

- 21 -

substantial shift of the sentencing range down or up in relation
to the normal case.

In assessing this question all points of view that might be
considered for evaluating the offense and the culprit were taken
into account, regardless of whether they are inherent in the
offense, accompany it, precede it, or follow it.  In accordance
with the general impression gained in this manner through
weighing the incriminating and exculpatory circumstances, the
Criminal Chamber came to the conclusion that the case differs
from the average of the cases that usually occur in the
experience of the court just to the extent that the application
of the exceptional sentencing range provided for a less serious
case appears warranted.

For the Criminal Chamber the following considerations were
decisive:

In favor of the defendant were the facts that he is still young
and at the time of the offense had just turned 21, that he has no
prior criminal record, he lives in orderly conditions, and
despite adverse living conditions was striving to achieve a lofty
educational goal.

In the trial he made what might be considered objectively to be a
partial confession.

Along with these personal circumstances it was of special weight
that the crime had not gone beyond the declaration of readiness
to the stage of concrete implementation.  The action with regard
to the three targets alternatively considered had become concrete
just to the extent of constituting an offense, but no further

- 22 -

preparatory actions were added to. It is not even certain whether the possible principals who had been had been approached regarded such a deed as opportune from the standpoint of timing, location, or general strategy.  On the other hand the dangerousness of the forces operating in the Near East and an instruction originating from there to someone willing to carry out a crime cannot be ignored.

The considerable, general dangerousness of such behavior was the only reason for imposing a more severe punishment.

The overall evaluation of all these circumstances, including the circumstance that only a preparatory act was involved (§ 30 StGB), resulted in a substantial predominance of the mitigating factors.  The sentencing range to be applied thus amounted to 6 months (or a fine) to 5 years imprisonment (§ 311/II StGB).  A further shift of the sentencing range under §§ 30, 49 StGB was not possible, because the Criminal Chamber had assumed a less serious case only incorporating the prerequisites of § 30 StGB and without this circumstance would not have arrived at this conclusion (§ 50 StGb; BGH, judgment of February 8, 1989 - 2 StR 299/88).

In the sentencing in the narrower sense of the term the Criminal Chamber again took into account the same sentencing considerations that were already the subject of the examination of the question whether a less severe case was involved.  A sentence of

2 years imprisonment

seemed absolutely necessary to punish the behavior of the

- 23 -

defendant, which was no trifling matter.  On the other hand, it also seems sufficient to do justice to the personal circumstances of the defendant.  In view of the kind of defense by the defendant, it could not be ascertained whether he has freed himself internally from his motives for action.  In any event a contrary position cannot be imputed to him, especially since he displayed a certain amount of cooperation with his partial confession in the trial and distanced himself from terrorist ambitions according to his defense.

The punishment could not be reduced to probation.  Despite other favorable personal prerequisites, there exist doubts with regard to the kind of crime whether the defendant has freed himself from his motives for action and thus about a favorable social prognosis (§ 56/I StGB).

In any event the special circumstances in the offense that could justify the suspension of the two-year imprisonment as an exception are lacking (56/II StGB).  The law-abiding population would also fail to understand if deeds of such general danger for public safety were to have only a sentence of probation imposed.

Public interest therefore calls for the execution of the punishment in this case to protect the public effectively against such terrorist activities that are being brought in over the borders ((§ 56/III StGB).

VI.

The time spent in police custody and pre-trial detention in this

- 24 -

case is to be counted toward the sentence imposed in accordance with the law (§ 51/I StGB).

VII.

Costs: §§ 464, 464a, 465/I StPO.

```
[signature]           [signature]
Dr. Hollenrieder      Hopfensperger         Kleiner
Presiding Judge       Judge                 Judge
at the Landgericht    at the Landgericht    at the Landgericht
                                            [handwritten: left the
                                            Chamber on December 12,
                                            1989
                                            {signed} Hollenrieder]
```

[stamp: Files with {illegible words}
on January 23, 1990]
[signature]

BP-S   **PROGRESS REPORT** CDFRM
FEB 94
**U.S. DEPARTMENT OF JUSTICE**                **FEDERAL.** BUREAU OF PRISONS

| Institution | Date |
|---|---|
| USP ALLENWOOD, PA | August 17, 1999 |

**Inmate Reviewed**

*B*

| Inmate's Signature | Date | Staff Signature |
|---|---|---|
|  | 8/17/99 |  |

1. Type of Progress Report
   Initial          Statutory Interim   XX   Pre-Release
   Transfer         Triennial                Other (Specify) _____

2. Name                    3. Register Number       4. Age (DOB)
   MAKKI, Bassam Gharib        58753-004                32(07-25-1967)

5. Present Security/Custody Level
   Medium/In

6. Offense/Violator Offense
   Misuse of Passport (2 counts) and Possession of False Documents
   Prescribed by Statute and Regulation for Entry into an Evidence of
   Authorized Stay and Employment in the United States.

7. Sentence
   16 months

| 8. Sentence Began | 9. Months Served + Jail Credit | 10. Days GCT/or EGT/SGT |
|---|---|---|
| 04-22-1999 | 4 Months +216 day JCT | 0 Days GCT |

| 11. Days FSGT/WSGT/DGCT | 12. Projected Release | 13. Last USPC Action |
|---|---|---|
| 0 Days DGCT | 11-17-1999 Via GCT | N/A |

14. Detainers/Pending Charge
    U.S. Immigration and Naturalization Service

15. Co-Defendants

    None

GOVERNMENT
EXHIBIT
9
PENGAD-Bayonne, N.J.

For Continuation Pages, type on a blank sheet with the Inmate's Name,
Register No., and Date and attach to this form.

Record Copy · Inmate File; copy · U.S. Probation Office; copy · Parole Commission Regional Office (if applicable); copy · Inmate

(This form may be replicated via WP)                    Replaces all BP-CLASS-3 and BP-387(5B) of NOV 90

PROGRESS REPORT
MAKKI, Bassam Gharib
REG. NO.: 58753-004
Page 2

## INSTITUTIONAL ADJUSTMENT

**PROGRAM PLAN:** Inmate Makki was received at USP Allenwood, PA, as a new commitment for service of his sentence on June 15, 1999.  During his initial classification, he was recommended to complete payment on his financial obligation, enroll in a Release Preparation Program, and complete all courses, complete the counselor group, Free By Choice, save sufficient funds for release, and maintain clear conduct.

**WORK ASSIGNMENTS:** During inmate Makki's brief stay at USP Allenwood, he has been assigned to job assignments in Chief Mechanical Services, and he his currently assigned to the Electrical Shop.  Inmate Makki has consistently received satisfactory evaluations from his supervisors concerning his work habits.

**EDUCATIONAL/VOCATIONAL PARTICIPATION:** Inmate Makki has not participated in any type of educational or vocational programs offered at this institution.

**COUNSELING PROGRAMS:** With the exception to participate in correctional counseling, no other type of counseling programs are noted.

**INCIDENT REPORTS:** During inmate Makki's incarceration with the Federal Bureau of Prisons, he has maintained a disciplinary free record.

**INSTITUTIONAL MOVEMENT:** Inmate Makki's was originally designated to USP Allenwood, PA, on June 15, 1999, to begin service of his federal sentence.

**PHYSICAL AND MENTAL HEALTH:** Due to inmate Makki's short stay at USP Allenwood, he has not been fully medically cleared at this time.  However, he has been cleared for placement in Food Service.  He appears to be in good physical health and not suffering from any type of psychological problems.  He is considered to be fully employable upon release.

**PROGRESS ON FINANCIAL RESPONSIBILITY PLAN:** Inmate Makki was sentenced to a $300 felony assessment.  He is due to make quarterly payments on this obligation beginning in September.  The balance of this obligation will be paid during his time on supervised release.

**RELEASE PLANNING:** Upon release from the Federal Bureau of Prisons, inmate Makki has no reside in the United States.  He is a citizen from Beirut, Lebanon and has a residence in that country with his wife, Zeinab Makki. It should be noted that inmate Makki has an active detainer from the United States Immigration Service concerning his possible deportation.

PROGRESS REPORT
MAKKI, Bassam Gharib
REG. NO.: 58753-004
Page 3

a.  Residence:        To be secured

b.  Employment:       To be secured

c.  USPO:             Richard A. Houck, Jr., Chief
                      District of Columbia
                      U.S. District Courthouse
                      Room 2800
                      3rd & Constitution Avenue, N.W.
                      Washington, D.C. 20001-2866


Inmate Makki is subject to notification under Public Law 103-322 the
Violent Crime Control Act and Law Enforcement Act of 1994 based upon his
prior convictions for crimes of violence.

d.  Release Preparation Program: Inmate Makki has requested to participate
in the Release Preparation Program at this institution.  To this date, he
has not completed any of these courses offered in this program.  He also
has been advised to start saving money for his release.

By:_____
        M. Sheehan, Case Manager Unit IIB

reviewed By:_____
        Donn C. Troutman, Unit Manager

Date Typed: August 17, 1999

Sensitive Limited Official Use Only

# FINANCIAL AFFIDAVIT

**CJA 23**
(Rev. 5/98)

**IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE**

| IN UNITED STATES | ☐ MAGISTRATE | ☐ DISTRICT | ☐ APPEALS COURT or | ☐ OTHER PANEL (Specify below) |
|---|---|---|---|---|

IN THE CASE OF

_____ VS. _____

FOR _____

AT _____

**LOCATION NUMBER**

PERSON REPRESENTED (Show your full name)

1 ☐ Defendant – Adult
2 ☐ Defendant – Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Parole Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other (Specify)

**DOCKET NUMBERS**

Magistrate
*99-MW-077-c*

District Court

Court of Appeals

CHARGE/OFFENSE (describe if applicable & check box → ) ☐ Felony
☐ Misdemeanor

## ASSETS

### EMPLOYMENT

Are you now employed? ☐ Yes ☒ No ☐ Am Self Employed

Name and address of employer: _____

**IF YES,** how much do you earn per month? $ _____

**IF NO,** give month and year of last employment
How much did you earn per month? $ *$11* *1000* / mo.

If married is your Spouse employed? ☐ Yes ☒ No

**IF YES,** how much does your Spouse earn per month? $ _____

If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

### OTHER INCOME

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? ☐ Yes ☒ No

| | RECEIVED | SOURCES |
|---|---|---|
| **IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES** | $ _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |

### CASH

Have you any cash on hand or money in savings or checking account ☒ Yes ☐ No **IF YES,** state total amount $ *m. in prison acct*

### PROPERTY

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☐ Yes ☒ No

| | VALUE | DESCRIPTION |
|---|---|---|
| **IF YES, GIVE THE VALUE AND DESCRIBE IT** | $ _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |

## OBLIGATIONS & DEBTS

### DEPENDENTS

MARITAL STATUS
☐ SINGLE
☐ MARRIED
☐ WIDOWED
☐ SEPARATED OR DIVORCED

Total No. of Dependents

List persons you actually support and your relationship to them

### DEBTS & MONTHLY BILLS
(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: | Creditors | Total Debt | Monthly Payt. |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

I certify under penalty of perjury that the foregoing is true and correct. Executed on (date) _____

**SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED)** ▶ _____

# United States District Court

_____ SOUTHERN _____   DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.

BASSAM GHARIB MAKKI

a/k/a Hassan Mohamad Makki

## WARRANT FOR ARREST

### CASE NUMBER: 99-3664-STB

TO:   **The United States Marshal
and any Authorized United States Officer**

YOU ARE HEREBY COMMANDED to arrest___ BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki ___

Name

and bring him forthwith to the nearest magistrate to answer a

[  ] Indictment   [  ] Information   [XX] Complaint   [  ] Order of court   [  ] Violation Notice   [  ] Probation Violation Petition

charging him with (brief description of offense)

MAKING A FALSE STATEMENT UNDER OATH BEFORE A UNITED STATES MAGISTRATE JUDGE

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1621.

STEPHEN T. BROWN

Name of Issuing Officer

Signature of Issuing Officer

Bail fixed at $

_____ United States Magistrate Judge _____

Title of Issuing Officer

Miami, Florida                     11/10/99

Date and Location

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

by _____

Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above named defendant at _____ | | |
| W/PA Williamsburg | | |
| DATE RECEIVED<br>11/12/99 | NAME AND TITLE OF ARRESTING OFFICER<br>JAMES A. TASSONE<br>US MARSHAL S/FL | SIGNATURE OF ARRESTING OFFICER<br>BY: JOHN R. HACKAMAN, SDUSM |
| DATE OF ARREST<br>11/17/99 | | |

AO 442 (Rev. 12/85) Warrant for Arrest



FILED by _____ D.C.
INTAKE

NOV 2 9 1999

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

BOND RECOMMENDATION

DEFENDANT__BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki_____

$ PTD (NO BOND)       (Personal Surety, Recognizance, Corp. Surety, Cash) (Jail) (On Bond) (Warrant) (Summons) (Marshal's Custody)

DAVID M. BUCKNER
ASSISTANT UNITED STATES ATTORNEY

Last Known Address:_____ # 58753 -004 N.W.

What Facility:     ALLENWOOD MAXIMUM SECURITY PRISON_____

Special Agent:     JAMES COMBS, U.S. DIPLOMATIC SECURITY SERVICE

DEFENDANT'S NAME: __BASSAM GHARIB MAKKI__

ALIAS: __Hassan Mohamad Makki__

LAST KNOWN RESIDENCE: __ALLENWOOD MAXIMUM__

____

LAST KNOWN EMPLOYMENT: _____

PLACE OF BIRTH: __Lebanon__

DATE OF BIRTH: _____

SOCIAL SECURITY NUMBER: _____

HEIGHT: _____ WEIGHT: _____

SEX: __Male__ RACE: _____

HAIR: _____ EYES: _____

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS: _____

_____

_____

FBI NUMBER: _____

COMPLETE DESCRIPTION OF AUTO: _____

_____

INVESTIGATIVE AGENCY AND ADDRESS: __U.S. DEPT. OF STATE DIPLOMATIC SECURITY SERVICE__

__FEDERAL BLDG., ROOM 404  51 S.W. AVENUE, MIAMI, FLORIDA 33130__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 99 - 3664 - STB

UNITED STATES OF AMERICA

v

**BASSAM GHARIB MAKKI**
**a/k/a   Hassan Mohamad Makki**
_____/

**CRIMINAL COMPLAINT COVER SHEET**

1.   Did this case originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?   __X__  Yes   ____  No

2.   Did this case originate from a matter pending in the Central Region of the United States Attorney's Office prior to April 1, 1999?   ____ Yes   __X__  No

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

BY: _____

DAVID BUCKNER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 60550
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9006
FAX (305) 530-7976

N:\udd\pglenn\circular\complaint cover .wpd

# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.

BASSAM GHARIB MAKKI
a/k/a Hassan Mohamad Makki

# WARRANT FOR ARREST

## CASE NUMBER: 99-3664-STB

TO:   The United States Marshal
      and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest__BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki_____
                                                    Name

and bring him forthwith to the nearest magistrate to answer a

[ ] Indictment  [ ] Information  [XX] Complaint  [ ] Order of court  [ ] Violation Notice  [ ] Probation Violation Petition

charging him with (brief description of offense)

MAKING A FALSE STATEMENT UNDER OATH BEFORE A UNITED STATES MAGISTRATE JUDGE

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1621.

FILED by _____ D.C.
MAG. SEC.
NOV 10 1999
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

STEPHEN T. BROWN
Name of Issuing Officer

United States Magistrate Judge
Title of Issuing Officer

Signature of Issuing Officer

Miami, Florida
Date and Location

11/10/99

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

Bail fixed at $_____    by _____
                                              Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above named defendant at _____ _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

AO 442 (Rev. 12/85) Warrant for Arrest



## BOND RECOMMENDATION

DEFENDANT   BASSAM GHARIB MAKKI a/k/a Hassan Mohamad Makki

$ PTD (NO BOND)        (Personal Surety, Recognizance, Corp. Surety, Cash) (Jail) (On Bond) (Warrant) (Summons) (Marshal's Custody)

DAVID M. BUCKNER
ASSISTANT UNITED STATES ATTORNEY

Last Known Address:

What Facility:        ALLENWOOD MAXIMUM SECURITY PRISON

Special Agent:        JAMES COMBS, U.S. DIPLOMATIC SECURITY SERVICE

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY.

DEFENDANT'S NAME:  BASSAM GHARIB MAKKI

ALIAS:  Hassan Mohamad Makki

LAST KNOWN RESIDENCE:  ALLENWOOD MAXIMUM

LAST KNOWN EMPLOYMENT:

PLACE OF BIRTH:  Lebanon

DATE OF BIRTH:

SOCIAL SECURITY NUMBER:

HEIGHT: _____  WEIGHT: _____

SEX:  Male  RACE:

HAIR: _____  EYES: _____

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS:

FBI NUMBER:

COMPLETE DESCRIPTION OF AUTO:

INVESTIGATIVE AGENCY AND ADDRESS:  U.S. DEPT. OF STATE DIPLOMATIC SECURITY SERVICE

FEDERAL BLDG., ROOM 404  51 S.W. AVENUE, MIAMI, FLORIDA 33130

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. *99 - 3664 - STB*

**UNITED STATES OF AMERICA**

v

**BASSAM GHARIB MAKKI**
**a/k/a   Hassan Mohamad Makki**
_____/

```
FILED by _____ D.C.
MAG. SEC.
      NOV - 4 1999
   CLERK U.S. DIST. CT.
   S.D. OF FLA. · MIAMI
```

**CRIMINAL COMPLAINT COVER SHEET**

1.    Did this case originate from a matter pending in the United States Attorney's Office prior to April 1, 1999?   _X_   Yes   ____   No

2.    Did this case originate from a matter pending in the Central Region of the United States Attorney's Office prior to April 1, 1999?   ____ Yes   _X_   No

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

BY:   _____

DAVID BUCKNER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 60550
99 N. E. 4th Street
Miami, Florida   33132-2111
TEL (305) 961-9006
FAX (305) 530-7976

N:\udd\pglenn\circular\complaint cover .wpd

AO 91 (Rev. 5/85) Criminal Complaint AUS.. BUCKNER

# *United States District Court*

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

v.

BASSAM GHARIB MAKKI
a/k/a Hassan Mohamad Makki

**CRIMINAL COMPLAINT**

CASE NUMBER: 99-3664-STB

FILED by ___ D.C.
MAG. SEC.
NOV - 4 1999
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about September 21, 1998, at Miami-Dade County, in the Southern District of Florida, the above defendant, having taken an oath before a competent tribunal, officer and person, that he would testify, declare, depose and certify truthfully, did willfully and contrary to such oath state and subscribe a material matter which he did not believe to be true, in that the defendant stated while under oath before a United States Magistrate Judge, that his name was Hassan Mohamad Makki, when in truth and in fact, and as the defendant then and there well knew, his true name was and is Bassam Gharib Makki; in violation of Title 18, United States Code, Section 1621.

I further state that I am a ___Special Agent___ and that this complaint is based on the following
Official Title

facts:

See Attached Affidavit

Continued on the attached and made a part hereof:   [x] Yes   [ ] No

Signature of Complainant JAMES D. COMBS
DIPLOMATIC SECURITY SERVICE - STATE DEPT.

Sworn to before me and subscribed in my presence,

___11/4/99___                                    at  __MIAMI-DADE COUNTY, FLORIDA__
Date                                                    City and State

⟋ **STEPHEN T. BROWN**
**UNITED STATES MAGISTRATE JUDGE**

__UNITED STATES MAGISTRATE JUDGE__
Name & Title of Judicial Officer

Signature of Judicial Officer

## **AFFIDAVIT**

JAMES D. COMBS, being first duly sworn on oath, deposes and states as follows:

1.      I am a Special Agent with the United States Diplomatic Security Service (DSS), and have been so employed for nine years.  Since August, 1997, I have been assigned to the international terrorism squad, JOINT TERRORISM TASK FORCE, of the Miami, Florida, Division of the FBI.

2.      Prior to employment with the DSS, I was employed as the Assistant Regional Security Officer assigned to the U.S. Embassy in Ottawa, Canada.

3.      This affidavit is submitted in support of my application for a criminal complaint charging BASSAM GHARIB MAKKI, with perjury and false statements.

4.      All of the information contained in this affidavit is the result of either my own personal observations, investigation, and experience, or has been provided to me by other law enforcement authorities.

5.      On or about September 15, 1998, the Brazilian Consul General in Asuncion, Paraguay, informed the U.S. Embassy in Asuncion that a person identifying himself as Mohammad Gharib Makki and bearing U.S. passport number Z7189091, had appeared at the Brazilian Consulate in Asuncion to apply for a Brazilian tourist visa.  The Consul General related that there were several aspects about the suspect that aroused suspicion.  For example, the applicant had departed Lebanon on September 14, 1998, and applied for his Brazilian visa almost as soon as he arrived in Paraguay, which the Consul General believed was unusual and suspicious. In addition, the suspect's U.S. passport was a replacement to a lost or stolen passport.  Further, the suspect seemed anxious to obtain his visa immediately.

6.      Mohammad Gharib Makki was then and remains a fugitive wanted for wire fraud, mail fraud and failure to appear in the Eastern District of New York.

7.      On September 18, 1998, the suspect was arrested by the Paraguayan National Police in Ciudad del Este, Paraguay, based upon the belief that he was the fugitive Mohamad Gharib Makki.  Immediately after his arrest, he was flown to the Silvio Pettirossi International Airport in Asuncion, Paraguay, and taken to the airport immigration office.  Immediately after he arrived, Special Agent Robert Wayne Starnes, United States Diplomatic Security Service conducted an interview of the suspect.  SA Starnes conducted the interview in English and the

suspect appeared to understand the questions.  The suspect also responded to the questions in English.

8.      Prior to the interview, SA Starnes advised the suspect of his Miranda rights.  The suspect signed a form in the name of Mohammad G. Makki and, during the subsequent interview, stated that his name was, indeed, Mohammad G. Makki.  Later, Detective Wayne T. Parola, New York City Police Department detailed to the New York Joint Terrorism Task Force and deputized as a Special Deputy United States Marshall, and Special Agent John G. Sorge, FBI, also interviewed the suspect at the airport and he again stated that his name was Mohammad G. Makki.  When Det. Parola stated that he knew Mohammad G. Makki and that the suspect was obviously not the same person, the suspect admitted to Det. Parola and SA Sorge that his name was not Mohammad G. Makki and stated that his name was really Hassan Mohamad Makki.  A fingerprint comparison of the suspect's fingerprints to known fingerprints of Mohammad G. Makki confirmed that the suspect was not Mohammad G. Makki.

9.      During a second interview by SA Starnes and SA Hector Rodriguez, FBI on 09/19/1998, the suspect again gave his name as Hassan Mohamad Makki.  Suspect subsequently traveled to Miami, Florida where he was arrested on passport fraud.

10.     At his initial appearance on 9/21/1998 in the United States District Court for the Southern District of Florida, Miami Division before the Honorable Robert L. Dube, United States Magistrate Judge, the subject was sworn and the Court asked him for his full name.  The subject stated that his name was Hassan Mohamad Makki.

10.     During the assimilation of the pretrial services report, the subject reiterated that his name was Hassan Mohammad Makki.

11.     At his removal hearing on 09/29/1998 before the Honorable Peter R. Palermo, United States Magistrate Judge, the Court, this time with the aid of an Arabic interpreter, again asked the suspect his true name in open court.  The suspect, who had by now had the benefit of consulting with a Federal Public Defender, again stated that his name was Hassan Mohamad Makki.

12.     On 10/6/1998 SA Michael J. Hudspeth, Diplomatic Security Service, interviewed a confidential informant who positively identified a photograph of the suspect as neither Mohammad Gharib Makki nor Hassan Mohammad Makki but as Bassam Gharib Makki.  The

informant added that Bassam Gharib Makki had a criminal record in Germany.

13.    By letter dated December 4, 1998 the Bavarian Ministry of Justice in Germany informed the Embassy of the United States that one Bassam Gharib Makki had indeed been convicted in the 1st Criminal Chamber of the Munich Landgericht I on December 22, 1989 of attempting to participate in a felony involving explosives.  German authorities confirmed that the same Bassam Gharib Makki was arrested in Germany in 1985 on an immigration charge.  A fingerprint comparison between known fingerprints of Bassam Gharib Makki from Germany taken in 1985 and those of the subject confirmed that the subject's true name is Bassam Gharib Makki.

14.  Based upon the above, your affiant has probable cause to believe that Bassam Gharib Makki committed perjury at his initial appearance before Magistrate Judge Dube by making a false statement under oath with regard to his identity in violation of Title 18 U.S.C. §1621.

AFFIANT FURTHER SAYETH NAUGHT.


SPECIAL AGENT JAMES D. COMBS
DIPLOMATIC SECURITY SERVICE


Sworn to and subscribed
before me this ⅋ day
of November, 1999


_____
UNITED STATES MAGISTRATE JUDGE